# DECISIONS

#### OF THE

# Court of Appeals of Kentucky.

## SEPTEMBER TERM, 1903.

CASE 1—PROSECUTION AGAINST FRED SANDERS FOR SELLING MILK FROM ANIMALS FED UPON "STILL SLOP."—DEC. 9.

## Sanders v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT, CRIMINAL DIVISION.

DEFENDANT CONVICTED AND APPEALS. AFFIRMED.

STILL SLOP—MILK COWS FED THEREON—SALE OF MILK—STATUTORY PROHIBITION—VALIDITY.

Held:    1. Kentucky Statutes, 1899, section 1274, prohibiting the sale of milk from cows fed on "still slop," being a regulation within the police power of the State, is not in conflict with the fourteenth amendment to the Federal Constitution, declaring that no State shall deprive any person of life, liberty, or property, though there is no evidence contradictory of the claim that still slop is a wholesome food for dairy cows.

NORTON L. GOLDSMITH, ALFRED SELIGMAN, AND GIBSON, MARSHALL & GIBSON, FOR APPELLANT.

### POINTS MADE AND AUTHORITIES CITED.

1. Sanders was indicted, convicted and fined for a violation of section 1274, Kentucky Statutes, which makes it an offense

Sanders v. Commonwealth.

to "knowingly sell any milk . . . from animals fed upon 'still slop,' 'brewers grain,' or brewer's slop.' "

2. So much of the act as so provides is not a proper exercise of police power. There is not even a legislative declaration as to the purpose of the act. It forbids the sale of milk so produced without reference to its quality, good or bad, or its effect, wholesome or otherwise upon those who use it, and without reference to the use to which it may be put. The indictment did not charge nor was any evidence introduced to show that milk so produced is improper as a food or injurious to health.

3. A conviction under this statute deprived Sanders of his privileges, his liberty and his property without due process of law, within the meaning of the fourteenth amendment to the Constitution of the United States, and the statute itself is repugnant thereto.

4. Before the courts will declare a statute to be a proper exercise of the police power, it must be able to see that its object tends towards the prevention of some offense or manifest evil, or that it has for its aim the preservation of public health, morals, safety or welfare. Kentucky Statutes, sec. 1274; Constitution of the United States, Amendment 14; Am. & Eng. Ency. of Law, vol 22, (2d ed.), 935, 936; Tiedeman Limitation Police Power, pp. 295-298; *In re* Jacobs, 98 N. Y., 98; People v. Mark, 99 N. Y., 377; City of Helena v. Dwyer, 64 Ark., 424; City of Chicago v. Netcher, 183 Ill., 104; Frorer v. People, 141 Ill., 171; Ramsey v. People, 142 Ill., 380; Braceville Coal Co. v. People, 147 Ill.. 66; Cooley Const. Lim., sec. 393; Frost v. City of Chicago, 178 Ill., 250; Rukstradt v. People, 49 L. R. A., 491; People v. Bieseker, 68 N. Y. Sup., 134; People v. Bischoff (Sup. Ct.), 14 N. Y. St. Rep., 581.

5. The case at bar must be distinguished from that line of authorities holding it to be a proper exercise of the police power for the Legislature to prohibit the manufacture or sale of an article made in imitation of another and sold in lieu thereof, *e. g.*, the manufacture or sale of oleomargarine made in imitation of butter. Powell v. Pennsylvania, 127 U. S., 678; Walker v. Pennsylvania, 127 U. S., 699; *In re* Brosnahan, 18 Fed. Rep., 62; Butler v. Chambers, 36 Minn., 69; State v. Addington, 77 Mo., 110; Powell v. Commonwealth, 114 Pa., 268; Commonwealth v. Sherley, 152 Pa. St., 170; Am. & Eng. Ency. of Law, vol. 22, (2d ed), p. 934.

6. The defendant was entitled to be peremptorily discharged because the evidence did not establish any sale of the milk. Commonwealth v. Schollenberger, 153 Pa. St., 625; Commonwealth v. Callahan, 1 Pa. Dist. Rep., 437.

WARWICK MILLER, COUNSEL FOR APPELLEE.
C. J. PRATT, ATTORNEY GENERAL, OF COUNSEL.

The contention in this case is:

1. Whether the statute prohibiting the sale of milk from cattle fed on "still slop" is in violation of the Federal Constitution.

2. Whether, if the statute is constitutional, the defendant can be convicted in the absence of any evidence that the milk he sold was impure or injurious to the health of those who used it.

We submit:

1. That under the police power of the State, the use of property may be so regulated as to insure the public health and safety of the people.

2. The Legislature of the State, is competent to prohibit the sale of an article if in its judgment it be necessary to protect the lives, health and comfort of the citizens of the State.

### AUTHORITIES.

Am. & Eng. Ency. of Law, vol 18, p. 748; Sarrls v. Commonwealth, 83 Ky., 327; Tiedeman's Limitations of Police Power, p. 295; Johnson v. Simonton, 43 Cal., 542; Brock v. Commonwealth, 17 S. W. R., 336; Dunn v. Commonwealth, 49 S. W. R., 813; Hawthorn v. People, 109 Ill., 302; Village of Carthage v. Frederick, 122 N. Y., 268; Pool v. Troxler, 76 N. C., 297; Commonwealth v. Pennsylvania Canal Co. 66 Pa., 41; Beer Co. v. State of Massachusetts, 97 U. S., 25; People v. Girard, 73 Hundley, 457; In re Jacobs, 98 N. Y., 98; People v. Marx, 99 N. Y., 377; People v. Arensberg, 105 N. Y., 123; Powell v. Commonwealth, 114 Pa., 265; Powell v. Pa., 127 U. S., 678.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

The appellant, Fred Sanders, was indicted, tried and convicted in the Jefferson Circuit Court for having knowingly sold milk from animals fed upon "still slop," in violation of the provisions of section 1274 of the Kentucky Statutes of 1899, which reads as follows: "Whoever shall knowingly sell, or cause to be sold, to any person in this State, milk diluted with water, or in any way adulterated, or milk from which any cream has been taken, or sell milk commonly known as 'skimmed milk,' with intent

to defraud, or shall knowingly sell any milk, the product of a diseased animal, or from animals fed upon 'still slop,' 'brewers' slop,' or 'brewers' grains,' or shall knowingly use any poisonous or deleterious material or milk from animals diseased or fed as aforesaid, in the manufacture of butter or cheese, shall be fined in any sum not less than twenty-five nor more than two hundred dollars." A reversal of the judgment of the circuit court is asked upon the ground that so much of the statute as prohibited the sale of milk from animals fed upon still slop is obnoxious to the fourteenth amendment to the Constitution of the United States, which provides, in section 1, that "No State shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Appellant's contention is based upon the claim that still slop, when used under proper conditions, is a wholesome and innocuous food for dairy cows, and that the milk from cows fed thereon is a pure and wholesome article of food for human beings. Our attention is called to the fact that there is nothing in the statute, nor the indictment which is the foundation of this prosecution, which negatives either of these contentions, and that no testimony was introduced by the Commonwealth upon the trial of the case for the purpose of establishing that such was the fact; that the whole proceeding rests upon the naked prohibition contained in the statute itself. The section upon which the prosecution is based is one of the provisions of the statute aimed at offenses against the public health, and was exercised under the police power of the State for the protection of the health of its citizens. No exact definition of

the extent of this power has, or perhaps can be given. Judge Cooley, in his work on Constitutional Limitations, has approved that given by Chief Justice Shaw in Commonwealth v. Alger, 7 Cush, 53, as the most satisfactory and complete to which his attention has been called. It is as follows: "All property in this Commonwealth is held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other usual and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient. . . . The power is vested in the Legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the Commonwealth and of the subjects of the same. It is much easier to perceive and realize the existence and source of this power than to mark its boundaries and limit its exercise." "And this power, under the American Constitutional system, is left with the individual States. It can not be taken away from them, either wholly or in part." See United States v. Dewitt, 9 Wall, 41, 19 L. Ed., 593. "Neither can the national government, through any of its departments or officers, assume any supervision of the police regulations of the States. All that the Federal authority can do is to see that the States do not, under cover of this power, invade the sphere of the national sovereignty, obstruct or impede the exercise of any authority which the

Constitution has confided to the nation, or deprive any citizen of the rights guarantied by the Federal Constitution." See Cooley on Constitutional Limitations (7th Ed.) 831, and authorities there cited.

The fourteenth amendment of the Federal Constitution was first called to the attention of the Supreme Court of the United States in the Slaughterhouse Cases, 16 Wall, 36, 21 L. Ed., 394. In construing a statute of Louisiana vesting in a slaughterhouse company the sole and exclusive privilege of conducting a live stock landing and slaughterhouse business, and requiring that all animals should be landed at the stock landing and slaughtered at the slaughterhouse of the company, and nowhere else, it was held that the statute did not conflict with the provisions of the fourteenth amendment. The scope of this amendment, in so far as it relates to the question before us, has been very clearly stated by Judge Cooley as follows: "The guarantied equal protection is not to be understood to require that every person in the land shall possess the same rights and privileges as every other person. The amendment contemplates classes of persons, and the protection given by the law is deemed to be equal if all persons in the same class are treated alike under like circumstances and conditions, both as to privileges conferred and liabilities imposed. The classification must be based on reasonable grounds. It can not be a mere arbitrary selection." Cooley's Constitutional Law. And the text is supported by numerous adjudged cases.

It is a canon of statutory construction that every presumption must be indulged in favor of the validity of the statute, as the Constitution confers upon the General Assembly the lawmaking power. But notwithstanding this general presumption, the courts must obey the Constitu-

tion, and determine in a particular case whether its limits
have been passed. As was said in Marbury v. Madison,
1 Cranch, 137, 2 L. Ed., 60: "To what purpose are powers
limited, and to what purpose is that limitation committed
in writing, if these limits may at any time be passed by
those intended to be restrained." "If, therefore, a statute
purporting to have been enacted to protect the public
health is a palpable invasion of rights secured by the funda-
mental law, it is the duty of the court to so adjudge, and
thereby give effect to the Constitution." See Mugler v.
Kansas, 123 U. S., 623, 8 Sup. Ct. 273, 31 L. Ed., 205. In
Powell v. Pennsylvania, 127 U. S., 678, 8 Sup. Ct., 992, 32
L. Ed., 253, it was held that the fourteenth amendment to
the Constitution was not designed to interfere with the
exercise of the police power by the State for the protection
of health, prevention of fraud, or the preservation of the
public morals, and that it was competent for the State
of Pennsysvania to prohibit the manufacture of oleomar-
garine butter. In that case the defendant offered to prove
that he made large profits from the sale of the prohibited
article, and that it was a wholesome and innocuous
food; that the statute upon which the prosecution was
founded was not a lawful exercise of the police power, be-
cause it deprived him of the lawful use of his property
without compensation. The court sustained an objection
to the evidence, and the defendant was adjudged to pay
a fine and the cost of the prosecution. The judgment was
affirmed by the Supreme Court of Pennsylvania, 114 Pa.,
265, 7 Atl., 913, 60 Am. Rep., 350. Upon appeal to the
Supreme Court of the United States, the question was
whether the prohibition of the sale and manufacture of
oleomargarine—a wholesome article of food—was a law-
ful exercise by the State of the power to protect by

Sanders v. Commonwealth.

police regulations the public health. In discussing this question, the court, through Judge Harlan, said: "As it does not appear from the face of the statute, or from any facts of which the court must take judicial cognizance, that it infringes rights secured by the fundamental law, the legislative determination of the question is conclusive upon the courts. It is not a part of their functions to conduct investigations of facts entering into questions of public policy merely, and to sustain or frustrate the legislative will embodied in statutes as they may happen to approve or disapprove its determination of such questions. The power which the Legislature has to promote the general welfare is very great, and the discretion which that department of the Government has in the employment of means to that end is very large. . . . Both its power and its discretion must be so exercised as not to impair the fundamental rights of life, liberty, and property. . . . The Legislature of Pennsylvania, upon the fullest investigation, as we must conclusively presume, and upon reasonable grounds, as must be assumed from the record, has determined that the prohibition of the sale, or offering for sale, or having in possession to sell, for purposes of food, of any article manufactured out of oleaginous substances or compounds, other than those produced from unadulterated milk, or cream from unadulterated milk, . . . will promote the public health and prevent frauds in the sale of such articles. If all that can be said of this legislation is that it is unwise or unnecessarily oppressive to those manufacturing or selling wholesome oleomargarine as an article of food their appeal must be to the Legislature or to the ballot box not to the judiciary. The latter can not interfere without usurping the powers committed to another department of the government."

In State v. Layton, 61 S. W., 171, 83 Am. St. Rep., 487, the Supreme Court of Missouri had before it an act of the General Assembly prohibiting the sale of "alum baking powder," as unhealthy. In this case there was no question of deceit in the sale of the prohibited article. The statute upon which the prosecution was based embodied no idea of the imitation of a superior article, and the court said: "No baking powder is recognized as the standard, as is butter from unadulterated milk in the oleomargarine statute. Here the statute must be upheld, if at all, upon the right of the Legislature to make all needful laws to preserve the public health. . . . While it is true that there are limits, under our system, to this power, we must start with the presumption in favor of the act. While we do not accede to the proposition that the Legislature can arbitrarily declare any article of food in general use, and concededly wholesome and innocuous, to be unhealthy, and its production and sale a crime, and would have no hesitancy in declaring such an act void when the act on its face discloses its arbitrary and unreasonable character, . . . if it be an article so universally conceded to be wholesome and innocuous that the court could take judicial notice of the fact, the Legislature has no right to prohibit its sale. But if there is a dispute as to the fact of its wholesomeness for food or drink, then the Legislature can either regulate or prohibit it. The act of the Legislature is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubts." Citing Cooley's Constitutional Limitations (6th Ed.) and numerous opinions.

It was decided in the case of Maryland v. Henry A. Broadbelt, 43 Atl., 771, 45 L. R. A., 435, 73 Am. St. Rep., 201, that the Legislature could, "under the police power,"

require the registration with "the live stock sanitary board" of all herds of cattle of persons selling milk for food, and prohibit the sale of milk from premises found in an unsanitary condition

The development in the science of bacteriology in recent years conclusively proven that the microbe is a most potent agent in the propagation of contagious diseases, and that there is no more favorable element for their absorption, growth and development than milk, and that milk contaminated by their presence communicates diphtheria, typhoid fever, tuberculosis, and other kindred contagious diseases, to human beings, especially to the young. And it is a matter of common knowledge that the conditions usually prevailing around places where "still slop" is produced are also highly favorable to the development of many forms of bacilli. The heat, dampness, and fermentation —all essential elements in the production of still slop— are favorable to germ growth. So that we may fairly assume that the General Assembly, in the enactment of this statute, had sufficient information to justify the belief that milk from cows fed on still slop had ample opportunity to become impregnated with elements dangerous to the public health. Nearly every police regulation affects to some extent property rights, and, whilst this power can not be made the excuse for oppressive and unjust legislation, the courts are not permitted to say that the Legislature may not enact laws apparently necessary for the public health. We have reached the conclusion that, under the facts of this case, this court has no power to hold that the General Assembly did not have under the "police power" authority to enact the statute under which appellant was convicted.

Judgment affirmed.