## Allison v. Cash, et al.

(Decided May 17. 1911.)

### Appeal from Lyon Circuit Court.

1. Boards of Health—Powers—A board of health is an instrumentality of government created for convenience and invested with such power as will enable it to protect the general health of the people of the State, County or Community over which it is given jurisdiction.

2. Same—Right of Quarantine Citizens—Fairly viewing the evidence the acts of appellees in closing appellant's store, disinfecting her goods and in requiring her to elect whether she would return to her home in Kuttawa, or be for a stated time quarantined in an isolated place in Eddyville, were reasonable and lawful measures adopted by them as members of the County Board of Health for the suppression of an extraordinary outbreak of smallpox, and were rendered unavoidable by appellant's conduct in violating the regulations established by appellee's acting as the local board of health, in causing her child to be carried from the infected town of Kuttawa to Eddyville and depositing his probably infected clothes in her store.

3. Same—Jurisdiction—Liability for Damages—It seems to be well settled that a health officer who by statute is authorized to take action for the prevention of the spread of disease is not liable for injuries resulting from such reasonable and customary measures as he may in good faith adopt or direct for that purpose with regard to persons or matters subject to his jurisdiction.

MILLER & MILLER for appellant.

NEWTON W. UTLEY, McQUOWN & BECKHAM for appellees,

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Mrs. C. S. Allison, sought in this action to recover in the court below $5,000 damages of the appellees, Sam G. Cash, Sheriff of Lyon County, W. L. Crumbaugh, County Judge thereof, Drs. J. H. Hussey, W. G. Kinsolving, C. H. Linn, and D. J. Travis, the five

last composing the county board of health of that county, for their alleged wrongful acts in compelling her to abandon her millinery store in Eddyville, causing its contents to be disinfected or fumigated, and thereby, as alleged, greatly injuring the value of same.

Appellees, composing the Lyon County Board of Health, by answer set out the powers of the board with respect to the prevention of contagious diseases; its adoption of the rules and regulations established by the State Board of Health for their suppression; the prevalence in the city of Kuttawa of smallpox; the necessity of enforcing the restrictions imposed by the rules referred to for preventing the spread of that highly contagious disease to Eddyville, only two miles from Kuttawa, which included the establishment of quarantine in behalf of Eddyville against Kuttawa, and appellent's violation of such rules and quarantine.

The answer admitted the closing and fumigation of appellant's millinery store by appellees, but averred that it was necessary and was done by reason of appellant's having brought to the store her son from Kuttawa, the infected city, in violation of the rules and quarantine regulations adopted and published by the board of health; that she placed in her store the cast off clothing worn by her son from Kuttawa, and thereby further violated the regulations established by the board of health; and that upon being directed by an order of and written notice from the board of Health to close the store, and go herself to her son in Kuttawa, or be quarantined in some isolated place in Eddyville thirty days, she elected to go to Kuttawa and did so, but refused to close the store; that the store was thereupon closed and properly disinfected by order of the board of health, and at the end of four days, which was the time required to complete the fumigation and disinfection, the key to the store was delivered to appellant's agent, to whom permission was given to reopen the store for business; but that appellant would not permit her agent to reopen the store and kept it closed for a month or more.

The answer denied the injuries to appellant's goods alleged in the petition and also the damages claimed, and alleged that if any injury was done them at all it was slight and was caused solely by the act of appellant, in keeping the store closed; and that the county board of

health in the matter of compelling appellant's isolation or return to Kuttawa and in closing her store and fumigating her goods, acted within their powers, in the performance of a governmental duty, and without malice.

The appellee, Cash, filed a separate answer in which he adopted the denials and averments of the answer of. the appellees composing the County Board of Health, and in addition, set out his election and qualification as sheriff of Lyon County and alleged his acts complained of by appellant were done in the discharge of his official duties as sheriff, in good faith, with due regard to her rights and by order of the county board of health, which he was legally bound to obey.

The issues were completed by the filing of replies which controverted all affirmative matter of the answers. The trial resulted in a verdict for appellees which the jury returned in obedience to a peremptory instruction from the court. Appellant filed motion and grounds for a new trial which was refused, hence this appeal. Briefly stated, the facts developed by the evidence were that in the latter part of March, or early in April, 1909, smallpox suddenly broke out in the town of Kuttawa. Though not of a virulent type it quickly became epidemic; at least 75 residents of the town became infected with it; and perhaps ninety per cent. of the population, owing to erroneous diagnoses of the earlier cases and lax enforcement of quarantine measures, had been exposed to infection. Kuttawa has a population of 1,200, and Eddyville a population of 1,400. Eddyville is the county seat of Lyon County and the place of location of one of the penitentiaries of the State in which 800 convicts are confined. The alarming situation caused quick and energetic action on the part of the county board of health which had thoroughly organized on February 1, 1909, and adopted the rules of the State Board of Health, and these rules the law makes it the duty of the county board to enforce. On April 14, 1909, the county board of health had a meeting at Kuttawa. At that meeting a general vaccination was ordered and every infected house in the town ordered to be placarded. The situation continuing serious another meeting was held by the board in Kuttawa, April 27, and an order was then made compelling the removal and isolation of all infected persons and directing that all who had been exposed to the disease should be forced to stay inside

their premises and away from contact with the public until given leave by an official health certificate. For the purpose of enforcing these orders a patrol officer was appointed for the town and each family supplied with a printed copy of the regulations. There still being no apparent abatement of the epidemic in Kuttawa and the danger of the disease reaching Eddyville becoming more imminent, the board of health held a meeting in the latter town on April 30, and made and published an order putting into effect there the rules and regulations of the State Board of Health for the suppression of contagious diseases and at the same time established strict quarantine against Kuttawa in behalf of Eddyville, prohibiting all passing and repassing of persons from one town to the other and establishing guards in Eddyville at the river front and depot. At this juncture appellant, who lived in Kuttawa, but owned and was conducting a millinery store in Eddyville, had her husband to bring their little son from Kuttawa to Eddyville. She met the child at the depot in a hack and took him with her to her store where she removed the clothing he had on and laid it away in the store, put other clothing on him and kept him with her that night in a room she was occupying over the store. It was apparent from the evidence that she concealed the child in the hack in taking him from the depot to her store, for the quarantine guard at the depot saw her drive away in the hack and did not see the child, and the driver of the hack testified that she secreted him by making him get on the floor of the hack at her feet. A day or two before the arrival of the child appellant had been refused permission by the health authorities to have the child sent to her at Eddyville. It also appeared from the evidence that in a house on the same street and near the one in which the child lived in Kuttawa, some of the children of his uncle had smallpox.

The bringing of appellant's child to Eddyville and the circumstances attending the act were made known to the board of health on the morning following his arrival. Its members at once held a meeting at which the following resolution or order was adopted:

"The quarantine being violated by Mrs. C. L. Allison, the following motion was made and adopted: 'That Mrs. C. L. Allison's place of business in Eddyville, Ky., be closed and 'she be permitted to return to Kuttawa at

once, or be isolated for thirty days and her house and goods fumigated, and that she be permitted to secure some one to take charge of her business in Eddyville, provided they have not been in Kuttawa, or some other infected place within the past twenty days.' "

Written notice of this action of the board was at once served on appellant by Sheriff Cash, who after its service, closed the store for immediate fumigation, which was properly accomplished through a health officer and in accordance with the regulations of the board of health. Appellant elected to go to her home in Kuttawa to which her child had already been returned, and she was furnished with transportation for that purpose.

It is complained by appellant that she was made to walk at least a part of the way to Kuttawa, which subjected her to discomfort. It is patent from the evidence that she was carried to the town limits and within a short distance of her home, and that the carriage could not proceed further without violating the quarantine regulations in force in Kattawa.

It is also complained that her store was kept closed by order of the board of health for at least four weeks and her stock of goods practically destroyed by that means and the disinfection given them. The weight of the evidence conduced to prove that the process of fumigation required four days, and that at the end of that time the key of the store was offered to her agent, Mrs. James, who was informed by the health officer that she might open the store and resume business for appellant, but that the latter, after a talk over the telephone with appellant, declined to reopen the store because appellant directed her not to do so, and informed her that it was her purpose to bring suit for the closing of the store.

Appellant, in giving her testimony, admitted that Mrs. James had been made her agent, but said she later withdrew the authority given the latter to act for her in receiving the store and resuming business therein, but Mrs. James testified that she did engage her to take charge of the store. It is true that an agency can not be established by the declarations of the agent alone, but in this instance the agent is supported and the agency otherwise established by the testimony of Miss Helen Evans, who said she was in the store when appellant left, and that the latter then said Mrs. James,

who was a milliner of broad experience, would have charge of her goods after the fumigation and proceed with the business. Considered as a whole evidence on this point shows that Mrs. James' agency was not revoked until after the tender of the return of the store.

Appellant's chief complaint, however, is as to the injury to her goods and the consequent alleged loss resulting to her. The evidence introduced in her behalf shows considerable injury to her goods and some of it fixes the damages as high as $1,000 or more, while that of appellees' witnesses tends to prove that $250 or $300 would fairly cover the original value of the goods and more than cover the loss she sustained. Considering the evidence as a whole, we think $500 would fully cover the original value of the goods and half that sum the injury to them, but it is not apparent to us that appellees are responsible for the injury to the goods. It was caused by her conduct in refusing to permit her agent to open the store and resume business. It is not apparent from the evidence that the fumigation of the goods caused any serious injury to them, but manifest that keeping the store closed after the goods were fumigated wrought the harm, for which the appellant alone was responsible. If, however, the entire injury could be attributed to the fumigation of the goods, there would still be no right of recovery, if, as contended by appellees, the conduct of appellant in violating the regulations of the board of health made the fumigation necessary.

Counsel for appellant earnestly insists that the county board of health was without authority to close appellant's store, even for the purpose of disinfecting it, and that its acts in closing and fumigating her store and establishing the quarantine were unlawful. It is argued, in other words, that a board of health in this State, whether State or county, is without authority to establish quarantine except in a county bordering on the Ohio or Mississippi River, or on a State line separating Kentucky from the States of West Virginia or Tennessee. We can not concur in this conclusion. Both the State and county boards of health are invested by law with broad powers for the protection and safety of the public health. The whole of chapter 63, Kentucky Statutes, is devoted to the subject of boards of health, their powers and duties; and in all questions affecting the public health, especially in a situation so immediately menac-

ing to the health and lives of a community as was the one confronting the board of health of Lyon County, the laws from which they derive their powers should be liberally construed that they may not be needlessly restricted in their efforts to preserve the public health, otherwise the health officers would be unable to know their duties and so embarrassed in their performance as to hesitate to act, until irreparable injury has resulted to the public.

This case does not depend upon whether the Lyon County Board of Health possesses the power to establish quarantine for the benefit of Eddyville against Kuttawa, although in our opinion such power is impliedly, if not expressly conferred by section 2055, Kentucky Statutes, which makes it the duty of the county boards:

"To inaugurate and execute and to require the heads of families and other persons to execute, such sanitary regulations as the local board may consider expedient to prevent the outbreak of and spread of cholera, small-pox, yellow fever, scarlet fever, diphtheria and other epidemic and communicable diseases, and to this end may bring the infected population under prompt and proper treatment during the premonitory or other stages of the disease, and they are empowered to go upon and inspect any premises which they may believe are in an unclean or infectious condition, and they shall be empowered to fix and determine the location of an eruptive hospital for the county sufficiently remote from human habitation and public highways as in its judgment is safe, and said boards are authorized and shall have power to enforce the rules and regulations adopted by the State Board of Health, and any person who shall fail or refuse, after written notice from the local board or State Board, to observe or obey the written request shall be fined not less than $10.00, nor more than $100.00 for each day he so fails or neglects * * *"

But while the powers enumerated in section 2055 seem sufficient to authorize a county board of health to establish and maintain quarantine in behalf of one city or county against another city or county within the state, such power cannot be exercised by a county board or the State board, as against another State or county thereof, without express legislative authority specifying the conditions and limitations upon which such quarantine shall be maintained. In the absence of such legislative author-

ity, the enforcement of quarantine regulations by one
State against another would violate the comity that
should exist between them and perhaps constitute an
interference with Interstate Commerce. Hence, sec-
tion 2056, of the Statute, supra, confers upon the State
and county boards of health authority to establish and
maintain quarantine in the counties bordering on the
Ohio and Mississippi Rivers which separate Kentucky
from many States, and in counties on the State lines
separating Kentucky from the States of West Virginia
and Tennessee, specifying in explicit terms for what
causes and in what manner it may be done.

But, as previously intimated, aside from the question
whether the Lyon County Board of Health exceeded its
powers in establishing quarantine against the town of
Kuttawa, it clearly had under the general powers con-
ferred by section 2055, supra, authority to compel the
closing of appellant's store for disinfection and likewise
to quarantine her, either by requiring her to return to
her home in Kuttawa, or be quarantined at some isolated
place in Eddyville for the time specified in the notice, as
the bringing of her son to the latter place from the in-
fected town of Kuttawa gave her an opportunity to be-
come infected with small pox and the leaving of his cast
off clothing in her store afforded danger of infection to
her customers.

In having her son taken to Eddyville, placing his
clothing in the store and refusing her consent to the
temporary closing of the store for disinfection, appellant
violated the rules and regulations established by the
county board of health and put in force in Eddyville for
preventing small pox from breaking out in that city.

In thus dealing with appellant and her property, ap-
pellees not only acted in pursuance of the powers confer-
red by the section of the statutes, supra, but also in con-
formity to the rules and regulations of the state board
of health appearing in the bill of evidence, which rules,
as before stated, were adopted by the Lyon County
Board of Health prior to the closing of appellant's
store.

Among these is rule 10, so much of which as will be
found pertinent, reads as follows:

"And in all cases where there has been an exposure,
or a suspected exposure to small pox of any person it

shall be the duty of the board of health under whose jurisdiction said person may be temporarily or permanently residing, to quarantine for twenty days such persons as may have been exposed or suspected of having been exposed to small pox, and to see that the health officer at once vaccinates, or re-vaccinates all who may have been thus exposed. It shall be the imperative duty of the board of health to enforce this rule and in case of refusal or neglect by said board of health to comply, with the requirements of this rule, it shall be the duty of the Secretary of the State Board of Health to assume charge, and either in person or by his inspector enforce the foregoing rule. * * *"

A board of health is in instrumentality of government created for convenience and invested with such powers as will enable it to protect the general health of the people of the State, county or community over which it is given jurisdiction. As said in 21 Cyc., 394, 395:

"The power to remove and quarantine persons who have been infected with communicable diseases, or exposed to contagion, need not, however, be conferred on sanitary authorities in express terms; but may be implied from the general power to preserve the public health, or to guard against the introduction or spread of contagious diseases. * * * Under powers similar to those which authorize the establishment of quarantine, sanitary authorities may require the disinfection not only of property that has actually been exposed to contagion, but or all articles liable to convey infection, especially where it is impossible to ascertain their history or the place from which they originally came. * * *It is no defense to an order for disinfection that the owner has already caused the property to be disinfected on his own account, where the authorities regard such previous disinfection as inadequate."

In Hedgehold v. City of Covington, 108 Ky., 782, this court held that the Legislature in the exercise of the police power may create boards of health, and invest them with the powers necessary and proper to prevent the spread of disease, and may confer upon cities authority to make regulations for the health of their communities; that under Kentucky Statutes, section 3058, part of the charter of cities of the second class, empowering the city council to establish and enforce quar-

antine laws and regulations to prevent the introduction and spread of contagious diseases, the council may by ordinance make reasonable regulations in addition to those provided by the general law establishing local boards of health, to prevent the spread of epidemic diseases; and, therefore, an ordinance providing for the removal of smallpox patients to the pesthouse upon the order of less than a quorum of the city board of health, or upon the order of the health officer, is valid, though the general law confers such power only upon the board.

In Twyman's Admr. v. Board of Council of Frankfort, 117 Ky., 518, the city was sued for damages for the death of an intestate caused, as alleged, by the negligence of its police in wrongfully removing him in inclement weather while afflicted with smallpox to the pesthouse provided for such patients. We held, however, that the city was not liable as the acts complained of were done to protect the public health and, therefore, in the performance of a duty which the municipality owed the public, the doing of which was but the exercise of power purely governmental. 15 Am. & Eng. Ency. of Law, 1141.

The acts of appellees complained of in the case at bar did not, according to the proof, constitute in the meaning of the Constitution or laws of the State, the taking of private property for public use; nor did they result in such an injury to or destruction of appellant's property as authorized a recovery. So we need not say what her remedy would be in either state of case. Fairly viewing the evidence, the acts of appellees in closing appellant's store, disinfecting her goods and in requiring her to elect whether she would temporarily return to her home in Kuttawa or be for a stated time quarantinued in an isolated place in Eddyville, were reasonable and lawful measures adopted by them as members of the county board of health for the suppression of an extraordinary outbreak of smallpox, and were rendered unavoidable by the appellant's conduct in violating the regulations established by appellees, acting as members of the local board of health, in causing her child to be carried from the infected town of Kuttawa to Eddyville, and depositing his probably infected clothes in her store.

Appellees do not in justification of their acts rely, as claimed by appellant's counsel, upon the provisions of

the statute with respect to quarantine in border counties against foreign States, which involve interstate regulations, but upon the rules and regulations put into effect by the State Board of Health, which relate to the internal welfare of the State and which they had the right to enforce for the protection of the health of the inhabitants of the city of Eddyville and adjacent territory. In this view of the matter the authorities relied on by appellant's counsel have little bearing on the case.

It is not shown by the evidence that appellees in the matters complained of acted arbitrarily, maliciously, with gross or willful negligence, or in wanton disregard of appellant's rights; but on the contrary, it is fairly apparent that they acted in good faith and in the performance of what they believed to be their official duty as members of the county board of health. Nor is there any evidence to show that the appellee, Cash's connection with the transactions in question puts his conduct in a light different from that of the other appellees. As sheriff he merely obeyed the orders of the local board of health in closing appellant's store. This he was bound to do; and no reason appears from the evidence to warrant the conclusion that he did not act in good faith, or that he was less considerate of the rights of appellant than her sex and relation to the transactions involved demanded.

It seems to be well settled that a health officer, who by statute is authorized to take action for the prevention of the spread of disease, is not liable for injuries resulting from such reasonable and customary measures as he may in good faith adopt or direct for that purpose with regard to persons or matters subject to his jurisdiction. 21 Cyc., 405; Slavy v. Preble, 64 Me., 120; Whidden v. Cheever, 69 N. H., 142; 76 Am. St. Rep., 154.

As it was reasonably apparent from the evidence that whatever loss appellant sustained from the closing and disinfection of her store was caused by her own acts, in refusing to obey the regulations of the county board of health for the prevention of an outbreak of smallpox in Eddyville, and in refusing to permit her agent to reopen her store and resume busines after the disinfection of her goods was effected, the trial court did not err in peremptorily instructing the jury to find for appellees.

Wherefore, the judgment is affirmed.

Whole court sitting