LAKEWOOD EXPRESS SERVICE, INC., A CORPORATION, PROSECUTOR–APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF NEW JERSEY, ET AL., DEFENDANTS–RESPONDENTS.

Argued September 27, 1948—Decided November 1, 1948.

46

*Mr. Milton B. Conford* argued the cause for prosecutor-appellant (*Messrs. Stein, Stern & Conford,* attorneys).

*Mr. Daniel De Brier,* Deputy Attorney General, and *Mr. George M. Eichler* argued the cause for the defendants-respondents (*Mr. Walter D. Van Riper,* Attorney General and *Mr. Frank H. Sommer,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the former Supreme Court dismissing a writ of certiorari allowed under the former practice, which judgment affirms a determination and order of the Board of Public Utility Commissioners, that the operations of the appellant were subject to the jurisdiction of the Board, that the appellant failed to comply with the applicable statute and the rules and regulations of the Board, and that the appellant should cease and desist from the operations challenged by the complaint of the Lincoln Transit Co., Inc., filed pursuant to the statute.

This appeal disputes directly the jurisdiction of the Board over the operations of the appellant and secondarily the reasonableness of the regulations prohibiting the use of the sedan type of equipment in the appellant's operations.

Appellant operates an express passenger service between New York, N. Y. and Lakewood and Asbury Park in this state, and the service is provided by the operation of several sedan type, seven passenger automobiles which pick up the individual passengers at their homes or designated localities and deliver them to destinations in the aforesaid cities. It is undisputed that the operation is interstate in character, that appellant has received the proper authorizations of the federal Interstate Commerce Commission, and that no intrastate service is involved.

The regulation of the Board in question is B-7, par. 31 (b) which specifically prohibits the use of equipment of the "sedan type" as an autobus in operations of this type.

The regulation was promulgated under the authority of *R. S.* 48:4–18 which provides as follows:

"The board of public utility commissioners may prescribe reasonable regulations with respect to the construction and equipment of autobusses carrying passengers between points in this state and points in other states. Such regulations shall be consistent with regulations prescribed by the board applying to the operation of autobusses between points in this state".

The appellant's first point is that Regulation B-7 is not legally applicable to the appellant since it does no intrastate business in this state.

██ We agree with the opinion below that the regulation does apply to the appellant and concur in the reasons stated therein for such conclusion. We are also clear that the amendment of *R. S.* 48:4–1 by *P. L.* 1946, *Chap.* 125, *p.* 602 does not suggest a legislative design to exclude autobusses engaged exclusively in interstate passenger service from the categories or subject to regulation under *R. S.* 48:4–18. The regulation has been in effect under statutory authority since 1927 and applies not only to intrastate operations, but also to interstate operations in which passengers are picked up or discharged at locations within this state. As the lower court said "The state has a distinct and special public interest in the transportation of persons in this class." *Sproles v. Binford,* 286 *U. S.* 374, 76 *L. Ed.* 1167, 52 *S. Ct.* 581. The challenged regulation operates in the part of such field reserved to the several states. *Sproles v. Binford, supra; South Carolina State Highway Dept. v. Barnwell Bros.,* 303 *U. S.* 177, 82 *L. Ed.* 734, 58 *S. Ct.* 510; *Maurer v. Hamilton,* 309 *U. S.* 598, *p.* 608, 84 *L. Ed.* 969, 60 *S. Ct.* 726. In our view it is not a question of public policy or of comity, but of a constitutional power residual in the several states exercisable only by them.

This brings us to the basic question here presented as to the reasonableness of, or necessity for, a regulation absolutely prohibiting the use of sedan type automobiles in the appellant's operations.

The appellant contends that regulation B-7 is unreasonable and arbitrary and therefore is illegal and unconstitutional, in

that it absolutely prohibits the use of the sedan type of automobile in the interstate transportation of passengers for hire and thereby results in the deprivation of the appellant's property without due process in violation of the State Constitution and the 14th Amendment of the United States Constitution.

This regulation was enacted under the police power of the state. This power extends to all great public needs and the constitutional interdictions as to due process and the protection of property rights does not prevent a state from exercising such powers as are vested in it for the promotion of the common weal or are necessary for the general good of the public even though property or contract rights are affected. *Manigault v. Springs*, 199 *U. S.* 473, 50 *L. Ed.* 274, 26 *S. Ct.* 127; *Home B. & L. Assn. v. Blaisdell*, 290 *U. S.* 398, 78 *L. Ed.* 413, 54 *S. Ct.* 231; *Veix v. Sixth Ward B. & L. Assn. of Newark, N. J.*, 310 *U. S.* 32, 84 *L. Ed.* 1061, 60 *S. Ct.* 792; *Bucsi v. Longworth B. & L. Assn.*, 119 *N. J. L.* 120, 123 *(E. & A.* 1937*)*.

But the exercise of such power is subject to the limitation that it must be reasonable under the conditions and the legislation must have a substantial relation to its object and must not be arbitrary or discriminatory. *Wolff Packing Co. v. Court of Industrial Relations*, 262 *U. S.* 522, 535, 67 *L. Ed.* 1103, 43 *S. Ct.* 630; *Nebbia v. New York*, 291 *U. S.* 502, 535, 78 *L. Ed.* 940, 54 *S. Ct.* 505. In other words the legislation must bear a real substantial relation to the public health, safety, morals or some other phase of the public welfare. Thus a regulation which in effect denies or unreasonably curtails the common right to engage in a lawful business cannot be sustained under the Fourteenth Amendment. *Regal Oil Co. v. State*, 123 *N. J. L.* 456, 461 *(Sup. Ct.* 1939*), N. J. Good Humor, Inc. v. Bradley Beach*, 124 *N. J. L.* 162, 169 *(E. & A.* 1940*)*.

The former Supreme Court concluded that since, in the experienced judgment of the Board of Public Utility Commissioners, the weight and the dimensional standards prescribed by regulation B-7 "bear a real and a substantial relation to safety in transportation", it could not brand its action as arbitrary.

Be that as it may the very statute, *R. S.* 48:4–1 *(d)*, as amended, under which the challenged regulation is · promulgated negates the idea that the sedan type of equipment is per se dangerous when used as an autobus, since it includes in the classes excluded from regulation "any autobus with a carrying capacity of not more ,than eight passengers operated under municipal consent upon a route established wholly within the limits of a single municipality which route does not in whole or in part parallel upon the same street the line of any street railway or traction railway or any autobus route".

The legislature by this language clearly indicated that in its judgment the sedan type of equipment is not dangerous per se nor does it constitute a dangerous or lethal threat to the safety of the traveling or general public, and that for the purpose of regulation there was a valid distinction between a motor vehicle readily recognized as an autobus used for the transportation of passengers and a sedan type of vehicle used for the same purpose. We pass without further comment at this time on the reasonableness of the restrictions contained in *R. S.* 48:4–1 *(d)* in their real and substantial relation to the public safety.

Regulation B-7 in its many and varied provisions does have a real and substantial relation to the safe operation of a motor vehicle generally recognized as an autobus. It guards against the many latent and obvious potentialities of danger arising from the negligent operation for such vehicles. But when it passes over the apparent fact of the lesser potential of danger in the use of sedan equipment for the transport of small numbers of passengers, and proceeds absolutely to prohibit such use, it places itself in the position of regulating the greater of two dangers and absolutely prohibiting the lesser danger. Since both types of regulation are enacted under the same statutory power, this apparent contradictory use of the power requires some explanation which we do not find in the record.

We are aware that on review by certiorari of a decision of the Board of Public Utility Commissioners under *R. S.* 48:2–43, that it has been held, as the court below pointed out, that the court should not substitute its judgment for that of the Board since the Board acts as a legislative agency in the

performance of its duty and that the court will not presume to substitute its judgment for that of such quasi judicial body where there is proof to support the conclusion of the Board. *Interstate Tel. Co. v. Board,* 84 *N. J. L.* 184, *p.* 189 *(Sup. Ct. 1913); N. J. Suburban Water Co. v. Board,* 123 *N. J. L.* 303, *p.* 307 *(E. & A.* 1939*).* But the federal and state constitutions fix the limits of the exercise of such powers by prohibiting the deprivation of property without due process of law or the taking of private property for a public use without compensation and guarantees to all the equal protection of the laws.

When the legislature acts directly its action is subject to judicial scrutiny and determination in order to prevent the transgression of these limits of power. The legislature cannot preclude that scrutiny and determination by any declaration or legislative finding. Nor can the legislature escape the constitutional limitation by authorizing its agent to make findings that the agent has kept within the limitations. The power of a court to review, in the situation here presented, was clearly stated by Chief Justice Hughes in *St. Joseph Stock Yards Co. v. United States,* 298 *U. S.* 38, *p.* 52, 80 *L. Ed.* 1033, 56 *S. Ct.* 720 wherein he said

"But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded. It is said that we can retain judicial authority to examine the weight of evidence when the question concerns the right of personal liberty. But if this be so, it is not because we are privileged to perform our judicial duty in that case and for reasons of convenience to disregard it in others. The principle applies when rights either of person or of property are protected by constitutional restrictions. Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority".

We are thoroughly in accord with this statement of the law and our view is supported by the following cases: *Pine v. Okzewski,* 112 *N. J. L.* 429 *(E. & A.* 1934*); State v. Newark*

*Milk Co.,* 118 *N. J. Eq.* 504, *p.* 518 *(E. & A.* 1935*);* *Hart v. Teaneck,* 135 *N. J. L.* 174 *(E. & A.* 1947*);* *Ohio Bell Tel. Co. v. Public Utilities Com'n,* 301 *U. S.* 292, 304, 81 *L. Ed.* 1093, 57 *S. Ct.* 724; *Yakus v. the United States,* 321 *U. S.* 414, 473 (dissenting opinion, Mr. Justice Roberts), 88 *L. Ed.* 834, 64 *S. Ct.* 660.

 In determining the reasonableness of such a regulation as is under attack it is therefore necessary for this court to examine proofs offered in support of the regulation. The testimony which sought to justify the prohibition of sedans was that the sedans are designed for private rather than public operation, that the doors may be opened at will by the passengers, that they are frequently overloaded, that because a sedan is a light or medium weight machine it does not provide adequate protection to the passengers. All of these reasons are equally applicable to any seven passenger automobile and it would seem to follow that if they are cogent reasons to support the prohibition challenged in this case, they would be equally compelling if urged in the support of a statute or regulation prohibiting the use of our highways by such sedan type of cars. We do not find these reasons persuasive.

It is further urged that the policing and inspection of sedans operated as motor vehicles for hire would be most difficult since it is hard to distinguish them from other sedan types of cars on the road privately operated. Obviously this difficulty is not one that is insurmountable and while regulation of this type of vehicle may be more onerous than the larger type of autobus, we are of the opinion that regulations can be designed whereby these cars could be checked and inspected on their regular routes at different times and different places. It is still further urged that the peak operation of sedans of this kind is in the season of the greatest highway congestion and that any large increase in the number of them in operation, if authorized, would result in very great congestion on our highways. There is nothing in the statutory sections under review that indicates there is any power in the Board of Public Utility Commissioners to regulate the number of automobiles operating on the highways of this state at any time. The power is limit-

ed specifically to motor vehicles used for the transport of passengers, both intrastate and interstate. We find nothing in the proofs that indicates the operation of the sedan type of car in this mode of passenger transport presents a greater hazard, either to the passengers or cars on the highway, than other seven passenger sedans not used in the transport of passengers for hire, except the possibility that the cars might be overloaded in attempts to carry all the baggage of the passengers but such situation could readily be dealt with by adequate regulation rather than an absolute prohibition.

It is common knowledge, and we can take judicial notice of the fact, that the sedan type automobile is extensively used with official sanction for the transportation of passengers for hire in many municipalities and for trips throughout the state and to other states. A regulation which ostensibly seeks the protection of the public safety but which factually runs counter to the common experience of mankind is unreasonable.

We have, therefore, concluded that regulation B-7, par. 31 (b) is unreasonable and arbitrary and bears no substantial relation to its object which was to protect the safety of the traveling and general public.

The judgment of the Supreme Court is reversed.

*For reversal:* Chief Justice VANDERBILT and Justices OLIPHANT, BURLING and ACKERSON—4.

*For affirmance:* Justice CASE—1.