ADAMS, INC., et al., Appellants,

v.

LOUISVILLE AND JEFFERSON COUNTY
BOARD OF HEALTH et al., Appellees.

Court of Appeals of Kentucky.

March 28, 1969.

James F. Steinfeld, F. Chris Gorman, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Lloyd R. Cress, Asst. Atty. Gen., Frankfort, Fred M. Goldberg, Louisville, Eugene H. Alvey, Director of Law, Bernard S. Goldstein, Asst. Director of Law, Louisville, for appellees.

CLAY, Commissioner.

The 29 appellants in this case are the owners of apartment building complexes in Jefferson County. The suit was brought to enjoin the Louisville and Jefferson County Board of Health from enforcing swimming pool regulations promulgated by that Board, and similar regulations promulgated by the Kentucky State Department

of Health. Questions of statutory construction and constitutional limitations are raised. The Chancellor adjudged appellants were not entitled to the relief sought.

The state regulations were promulgated under the authority of KRS 211.180 and the local regulations were promulgated under the authority of KRS 212.370. The basic ground of attack is that the apartment swimming pools are *private* and the authority of the administrative agencies to make the kind of regulations here in issue extends only to such facilities as are *public*. There does not appear to be any question of the right of these administrative agencies to regulate the construction and physical maintenance of the pools insofar as water purification and other health safeguards are concerned. The principal objections are to those regulations which require lifeguards or other attendants and which pertain to the use of the pools by bathers.

Appellants are the owners and operators of 29 multi-unit apartment complexes containing from 24 to 366 units, each complex being equipped with a swimming pool. Between 6,000 and 9,000 persons reside in these apartments. The swimming pools were designed for the exclusive use of tenants and their invited guests. They are all enclosed by fencing and all are on appellants' properties.

■ We will first examine appellants' contention that KRS 211.180 and KRS 212.370 relate only to matters of public *health* and therefore the state and local administrative agencies have no authority to prescribe regulations pertaining to *safety*, such as requiring lifeguards. We note that KRS 211.180 refers to the "operation" of swimming pools and grants authority to the state Board to exercise "control of such other factors as may be necessary to assure a safe and sanitary environment". There is no such language in KRS 212.370. However, it is our opinion that the safety of those using swimming pools is so closely interrelated with the health problems involved that reasonable regulations concerning lifeguards must be held to be within the scope of the granted administrative power. It would be rather ridiculous to require the creation of another agency to regulate this phase of a swimming pool operation. We hold that in this respect health measures encompass reasonably related safety measures.

It is next contended that the state Board, by its own regulatory definitions, has excluded from its regulations such pools as are maintained by appellants. Sections (1) and (2) of these regulations provide:

"1. SCOPE. The provisions of this regulation apply to all 'public swimming pools' including all facilities incident thereto. The purpose of this regulation is to provide minimum standards for the design, construction, operation and maintenance of *public* swimming pools so that health and safety hazards will be minimized. This regulation does not apply to private swimming pools."

"2. DEFINITIONS.

"(3) 'Public Swimming Pool,' 'Swimming Pool,' or 'Pool' means any structure, basin, chamber, or tank containing any artificial body of water for swimming, diving, wading or recreational bathing, and auxiliary structures including dressing and locker rooms, toilets, showers and other areas and enclosures that are intended for the use of the *public* regardless of whether a fee is charged for such use. It includes pools intended to be used collectively by numbers of persons for swimming or bathing operated by any person whether he be owner, lessee, operator, licensee, or concessionaire, and *all other pools except private swimming pools as hereinafter defined.*"

"(4) 'Private Swimming Pool' means a *residential* swimming pool located on private property *under the control of the homeowner,* the use of

which is limited to swimming or bathing by members of his family or invited guests." (Emphasis added)

■ It is asserted that appellants' pools are private residential pools maintained for the use of the tenants and their guests and are not open to public use. This may be true, but they do not fall within the administrative definition of a "Private Swimming Pool". This definition clearly contemplates a family swimming pool as an annexation to a residence. If we classify each appellant landlord as the "homeowner", the use of the pool is not limited to *his* (its) family. If we classify a tenant as the "homeowner", the apartment pool does not fall within the definition because it *is not under his control.* The regulations of the county Board do *not contain a similar exemption.* They apply to "any body of water used collectively by numbers of persons for swimming and recreational bathing". Appellants' pools are not exempted from control by either the state or local regulations.

Regardless of the statutory definition, a controversy rages in the briefs on the issue of whether appellants' swimming pools are *public* or *private.* We have some difficulty grasping the thrust of appellants' argument on this point. They do not question the right of the state and local agencies to regulate the design of pool construction or to promulgate regulations relating to the purification of water, whether the pools are public or private.

■ Apparently appellants' broad constitutional objections are based on the theory that neither the state nor the local agency has authority to promulgate health or safety regulations regarding operation unless the swimming pool involved falls within the technical classification of a "public" one. It is suggested that KRS 211.180 (granting power to the state agency) is limited to "public" swimming pools. It cannot be so interpreted. The state Board is authorized to execute policies "relating to all matters of public health". While the

statute designates particular areas of control, it provides that the authority is not limited to those specified.

■ The constitutional right of the legislature to act in this area, or the statutory authority of the state or local agencies cannot be determined by labeling appellants' pools either "public" or "private". The question is whether, from the standpoint of health and safety, there is a recognizable public interest in their operation which would justify the exercise of the police power of regulation. We think it obvious that where a substantial number of people collectively use a swimming pool, there is a *public* health problem. It is immaterial whether the pool is open to all members of the public or a special segment thereof. The owner's restriction on use has nothing to do with the health problem. It is the health welfare *of the community* which is significant. As observed by the Chancellor in an excellent opinion:

> "We must not lose sight of the fact that the statute has for its purpose the safeguarding of the health of all citizens, not just the health of a few citizens. It is with this purpose in mind that the statute and definitions must be considered. It is true that the right to use the subject swimming pools is, in a sense, limited to the tenants in the apartments and their invited guests. However, communicable diseases are not limited within the scopes of the swimming pools or within the four walls of the apartment dwellings. Therefore, we cannot narrow the applicability of the statutes or the definitions merely to the tenants. The community at large can be subjected to an epidemic from the use of the plaintiffs' facilities as easily and as readily as from the use of any swimming pool maintained or operated by a public facility."

■ There is perhaps no broader field of police power than that of public health. The fact that its exercise impinges upon private interests does not restrict reason-

able regulation. This is illustrated in the following cases.

In Sanders v. Commonwealth, 117 Ky. 1, 77 S.W. 358, a statute was upheld which prohibited the sale of milk by anyone which emanated from animals fed upon "still slop".

In Allison v. Cash, 143 Ky. 679, 137 S. W. 245, the right of a county board of health to quarantine the plaintiff's millinery store to prevent the spread of a contagious disease was upheld.

In Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761, a municipal ordinance (enacted under statutory authority) was upheld which made it unlawful for a person to maintain a private cesspool and require him to drain sewage into the municipal sewerage system. It was therein stated (page 765 of 78 S.W.2d):

> "Under these conceptions of general subordination of private rights to public rights, we have no doubt that the city may enact laws to preserve and promote the health, morals, security, and general welfare of the citizens as a unit, and has a broad discretion in determining for itself what is harmful and inimical. It is sufficient if the municipal legislation has a real, substantial relation to the object to be accomplished, and its operation tends in some degree to prevent or suppress an offense, condition, or evil detrimental to a public good or reasonably necessary to secure public safety and welfare."
>
> \*    \*    \*    \*    \*    \*
>
> "The community is to be considered as a whole in the matter of preservation of the health of all inhabitants, for a failure by a few to conform to sanitary measures may inflict ill health and death upon many."

In City of Louisville v. Thompson, Ky., 339 S.W.2d 869, a municipal ordinance was upheld which required that a private dwelling unit be equipped with an inside bathroom with certain specified facilities. Therein was recognized the broad discretion of legislative bodies in preserving and promoting the public health.

█ It is thus apparent that, insofar as public health is concerned, private property may become of public interest and the constitutional limitations upon the exercise of the power of regulation come down to a question of "reasonability". City of Louisville v. Kuhn, 284 Ky. 684, 145 S.W.2d 851. As stated in Sanitation Dist. No. 1 of Jefferson County v. Campbell, Ky., 249 S.W. 2d 767, 772, "Public health is a community matter". Neither the statutes nor the regulations here involved can be invalidated on the ground that they encompass appellants' swimming pools which are essentially private rather than public in character. Because of the nature of their use, for certain purposes they fall within the public domain.

█ In California a classification of a private country club swimming pool as a "public swimming pool" by the State Department of Health was upheld as conforming to the public health problem with which the Board's regulations were concerned. Lucas v. Hesperia Golf & Country Club, 255 Cal.App.2d 241, 63 Cal.Rptr. 189. But as we have pointed out above, the right of regulation is not dependent upon such a classification. We hold that the regulations here involved are not invalid on the ground that the legislature or the administrative agencies lacked the police power to prescribe reasonable health and safety rules encompassing appellants' swimming pools.

This brings us to the final contention that certain specific regulations are unconstitutional because they are unreasonable. Appellants claim a violation of the 4th, 5th and 14th Amendments to the Constitution of the United States and Sections 2, 13 and 242 of the Constitution of the Commonwealth of Kentucky. It is unnecessary to examine these specifically. As observed in

Roe v. Commonwealth, Ky., 405 S.W.2d 25, 27:

"The basic standard by which the validity of all exercise of the police power is tested is that it extends only to such measures as are reasonable. It has been said that the *only* limitation upon the exercise of the police power is that such exercise must be reasonable."

See also Moore v. Ward, Ky., 377 S.W.2d 881.

■ Our holding that the state and local administrative agencies have authority to promulgate regulations applicable to appellants' swimming pools within the general area of public health and safety does not necessarily mean that all of the regulations are valid as to them. It has been held:

"A statute may be valid as to one set of facts and invalid as to another, or the manner in which it is administered may be constitutionally offensive. Some property may be protected from the legislation while the other property may not be."

Sanitation Dist. No. 1 of Jefferson County v. Campbell, Ky., 249 S.W.2d 767, 770. By the same token, regulations which may be necessary and proper in one area may not bear a reasonable relationship to the situation in another area. It was said in City of Louisville v. Kuhn, 284 Ky. 684, 145 S.W.2d 851, 856:

"In the Tolliver [Tolliver v. Blizzard, 143 Ky. 773, 137 S.W. 509] case it was declared, in substance, that if the enactment was referable to the Police Power, then the court must be able to say that it tends in some degree toward the prevention of offenses, or the preservation of the public health, morals, safety, or welfare of the people as based upon some reasonable grounds. Therefore, if it is apparent that there is no plausible or reasonable connection between the provisions of the statute and the supposed evils to be suppressed, there exists no

authority for its enactment. That principle has been declared by every opinion rendered by this court dealing with the question, and we have been able to find none announcing a contrary doctrine, from all of which it may confidently be said that the legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business by imposing unusual, unreasonable and unnecessary restrictions upon lawful occupations."

Similarly it was said in Bond Bros. v. Louisville & Jefferson County Met. Sewer Dist., 307 Ky. 689, 211 S.W.2d 867, 872:

"It is fundamental that such an extraordinary power (the police power) is not without limitation, for it may not operate unreasonably beyond the occasion or necessity of the case. It may not unreasonably invade private rights and thus violate those rights guaranteed under either the Federal or the State Constitution. 11 Am.Jur., Constitutional Law, Sec. 259. The exercise of the power must have a substantial basis and cannot be made a mere pretext for actions that do not come within its scope. To state it another way, the action of the government may not arbitrarily invade liberty or property rights under the guise of police regulation."

In Roe v. Commonwealth, Ky., 405 S.W.2d 25, statutory regulations pertaining to nudist colonies were in question. We there held that the imposition of an annual $1,000 license tax and the requirement that the colony be surrounded by a 20-foot masonry wall were so unreasonable as to invalidate the legislation.

■ As mentioned earlier in the opinion, the real controversy in this case does not involve the state and local regulations generally but only certain specific ones which appellants contend will impose an unnecessary and unreasonable hardship upon them. In considering the reasonableness of regulations impairing private

rights, many factors need be taken into consideration. As in so many other legal problems, the question is one of degree. 16 Am.Jur.2d, Constitutional Law, section 278 (page 540). It is proper to consider habits and customs. Ex parte Hall, 50 Cal.App. 786, 195 P. 975. Also common knowledge. Lakewood Exp. Service v. Board of Public Utility Comrs., 1 N.J. 45, 61 A.2d 730, 7 A.L.R.2d 1259. Cost is a significant factor. Roe v. Commonwealth, Ky., 405 S.W.2d 25, and Missouri Pac. R. Co. v. Norwood, D. C., 13 F.Supp. 24. Necessity must be considered. McKay Jewelers v. Bowron, 19 Cal.2d 595, 122 P.2d 543, 139 A.L.R. 1188.

■ The difficulty with which we are confronted, and with which the administrative agencies are confronted, is that there are very marked differences in types of pools, the character of surrounding facilities and the nature and extent of use. While all swimming pools may present some common health hazards which would reasonably require the same regulatory safeguards, in certain areas the dissimilarity in prevailing conditions would make the application of a single standard inappropriate, unrealistic and unreasonable. We will direct our attention to certain specific regulations which we consider in this category.

As we read the regulations of the State Department of Health, and particularly section 21(1) thereof, lifeguards are not required by those regulations. However both the Louisville city ordinance and the local Board's regulation do require the attendance of a trained lifeguard at all times when pools are open for use by bathers. Such requirement involves serious management, personnel and cost problems.

The proof in this case established that most of appellants' pools were relatively small, with dimensions of approximately 20 feet by 40 feet, and with a maximum depth of only five feet. There was evidence that few tenants in some apartment complexes used the pools. The relative sparsity of

bathers usually availing themselves of these facilities raises a serious question as to whether a full-time lifeguard is reasonably necessary. As one witness expressed it, they were "not necessary because there are not enough people around to guard".

Of course this question of necessity is one which the proper administrative authorities normally should resolve. However, the practice indicated by the evidence of enforcing certain regulations against the owners of one type of pool and not enforcing those regulations against owners of pools in a different category is not a proper legal method of dealing with the varying health and safety hazards. This practice itself is evidence that the classification of all swimming pools in one category for all purposes is too broad.

■ As above mentioned, the local regulations require the attendance of trained lifeguards at all times when swimming pools are available for use regardless of the type of pool, the nature and extent of its use, or the customary methods of supervisiting its operation. As applied to *all* pools, the burden of this regulation greatly outweighs the reasonably necessary safety objective sought. The threat of required compliance might well eliminate a substantial number of these recreational areas, which have a significant social value, because the regulation imposes an unrealistic and unnecessarily burdensome requirement on a substantial number of private property owners. We think the sweep of this lifeguard regulation is so broad that the single classification of all pools does not bear a reasonable relationship to its avowed purpose. See 16 Am.Jur.2d, Constitutional Law, section 280 (page 542). We therefore conclude that the regulation is invalid.

■ For similar reasons we think the requirement of an additional attendant on duty to check bathers to insure that they have taken a proper shower bath, which applies to all pools, is also unreasonable. (It may be observed that this regulation is,

from a practical standpoint, unworkable.) The requirement of separate entrances and exists for men and women is likewise unreasonable. Similarly the requirement that bathers shall pass toilets and go through a shower room before entering the pools, because so many pools of a private character do not have communal dressing rooms.

To the extent set out above, we are of the opinion that the specified regulations are invalid and consequently may not be enforced against appellants.

The judgment is reversed, with directions to grant appellants appropriate relief consistent with this opinion.

All concur, except, REED, J., who concurs in the result only.

STEINFELD, J., not sitting.