678 P.2d 687

John J. CHAPMAN, Troy H. Elliott and N. Altom, Petitioners-Appellants,

v.

Robert E. LUNA, Ph.D., Ann Hyde, Erika Jones, Jonathan Samet, Ph.D., Gary Lewis, James Montoya and Mike Creusere, as members of the Alb/Bern County Air Quality Control Board, City of Albuquerque and the Board of County Commissioners of Bernalillo, Respondents-Appellees.

No. 14867.

Supreme Court of New Mexico.

March 13, 1984.

Bruce E. Pasternack, Michael J. Condon, Albuquerque, for petitioners-appellants.

Gary O'Dowd, City Atty., Barbara W. Stephenson, Asst. City Atty., Albuquerque, Brown, Bain & Bingaman, Philip R. Higdon, Santa Fe, Hunter L. Geer, Joe Diaz, Albuquerque, for respondents-appellees.

**OPINION**

RIORDAN, Justice.

John J. Chapman, Troy H. Elliott, and N. Altom (Petitioners) filed suit in district court seeking a declaratory judgment that the operation and enforcement of the joint Albuquerque-Bernalillo County Motor Vehicle Emissions Inspection Program (Program) is unlawful. After a non-jury trial, the district court dismissed Petitioners' complaint and entered an order upholding the Program. Petitioners appeal. We affirm in part and reverse in part.

The issues we address [1] are:

I. Whether state law prohibits the City from imposing an inspection fee for the Program.

II. Whether the Program violates equal protection standards by allowing exemptions not based on reasonable distinctions.

III. Whether the Program's criminal penalty provisions are invalid.

IV. Whether the ordinances' severability clauses should be given effect.

In 1979, the Albuquerque City Council (Council) and the Bernalillo County Commission (Commission) enacted ordinances which established prohibitions against excessive air pollutant emissions from motor vehicles in the city of Albuquerque and in Bernalillo County. The ordinances delegated the power to regulate the operation of a vehicle emissions inspection and maintenance program to the Albuquerque-Bernalillo County Air Quality Control Board (Board).

The Board, pursuant to its authority, adopted regulations for the establishment and operation of the Program. The Program requires that all private motor vehicles manufactured in 1968 and thereafter undergo an emissions inspection. Any vehicle failing the initial inspection may obtain a waiver from compliance with Board emission standards if the vehicle receives a prescribed low-emissions tune-up, or up to $75.00 worth of repairs in attempting to bring the vehicle into compliance ($75.00 Repair Provision). Upon payment of an inspection fee (Inspection Fee), the vehicle owner is given an inspection certificate (Certificate) to be displayed on the vehicle. Violation of any provision of the Program is a misdemeanor punishable by a fine of not more than $300.00 and/or not more than 90 days imprisonment for operating a registered vehicle without a Certificate.

The Program was to go into effect on December 31, 1982. Petitioners filed a petition for writ of mandamus seeking to halt operation and enforcement of the Program on statutory and constitutional grounds. The district court granted a motion for leave to intervene by Hamilton Test Systems, Inc. (Hamilton) on the basis of Hamilton's status as a party to the contract with the City of Albuquerque (City) for design and operation of the Program's test stations. On January 7, 1983, the district court ordered operation and enforcement of the Program ceased until January 17, 1983. The district court subsequently designated the action as a suit for declaratory judgment.

I. *Inspection Fee.*

Petitioners argue that the imposition of the Inspection Fee constitutes the charging of fees for vehicles subject to registration under the Motor Vehicle Code, NMSA 1978, Sections 66-1-1 to 8-140 (Orig.Pamp. and

---

**1.** The issues we address on appeal are limited and specific. A number of other issues discussed at oral argument, but not raised in the briefs, might effect the validity of the Program. Therefore, this opinion is not to be construed as an approval of the Program.

Cum.Supp.1983), and that Section 66–6–25 prohibits imposition of the Inspection Fee. Section 66–6–25 provides:

No county or municipality shall require registration or charge *fees* for any vehicle subject to registration under the Motor Vehicle Code * * *. (emphasis added).

The Council, Commission, and Hamilton argue that the Inspection Fee is not a "fee" within the meaning of Section 66–6–25. They claim that the purpose of Section 66–6–25 is to prohibit cities and counties from using vehicles as a means of raising general revenues and that the Inspection Fee is only for defraying the administrative costs of an environmental program that was specifically delegated to local authorities by the State. They also argue that the Inspection Fee is a valid exercise of local authorities' home rule power. We disagree.

■ This Court has the duty of construing statutes, if possible, to resolve any apparent conflict. *Runyan v. Jaramillo*, 90 N.M. 629, 567 P.2d 478 (1977). However, where a statute makes sense as written, we will not read language into it which is not there. *Burroughs v. Board of County Commissioners*, 88 N.M. 303, 540 P.2d 233 (1975). Section 66–6–25 states that no city or county shall charge *fees* for motor vehicles. It does not limit cities and counties to the imposition of only certain fees as the Council, Commission and Hamilton argue. Instead, Section 66–6–25 makes clear the legislative intent that cities and counties are prohibited from charging *any* fees for motor vehicles, regardless of the purpose of the fees.

We therefore determine that the imposition of the Inspection Fee is prohibited under Section 66–6–25.

■ N.M. Const. Art. X, Section 6, the municipal home rule amendment, provides in pertinent part:

D. A municipality which adopts a charter may exercise all legislative powers and perform all functions *not ex-*

*pressly denied by general law* or charter. (emphasis added).

The major case discussing "municipal home rule" in New Mexico is *Apodaca v. Wilson*, 86 N.M. 516, 525 P.2d 876 (1974). The issue in *Apodaca* was whether the City of Albuquerque could increase water and sewer rates and apply the increased revenue to municipal functions other than those set out by statute. The statutes at that time specifically allowed the City to use water and sewer revenues for "maintaining, enlarging, extending, constructing and repairing'" water and sewer systems. *Id.* at 519, 525 P.2d at 880 (quoting NMSA 1953, Repl.Vol. 3, (1968)), § 14–26–4 and § 14–25–2(A). The statutes did not authorize the revenue to be used for any other purpose nor did it forbid its use for other municipal functions. In ruling in favor of the City, this Court stated:

The [Municipal Home Rule Amendment] and art. I of the City Charter enable the City, as a municipal corporation, to exercise all legislative powers and to perform all functions *not expressly denied by* the City Charter or *general state law.*

*Apodaca*, 86 N.M. at 520, 525 P.2d at 880 (emphasis added). This Court defined "general law" as "a law that applies generally throughout the state, or is of statewide concern * * *." *Apodaca*, 86 N.M. at 521, 525 P.2d at 881. This Court also determined that "not expressly denied" means that "some express statement of the authority or power denied must be contained in such general law in order to be applicable * * * or otherwise no limitation exists." *Apodaca*, 86 N.M. at 521–522, 525 P.2d at 881–882.

The law at issue here, Section 66–6–25, applies generally throughout the state and is of statewide concern because the people of the state have an interest in maintaining a uniform system of conditions and charges for operating motor vehicles in the state. Section 66–6–25 is therefore a "general law", and it clearly and expressly states that cities and municipalities are prohibited from charging fees for motor vehicles subject to registration.

Therefore, we also determine that the imposition of the Inspection Fee is not a valid exercise of local authorities' home rule power.

## II. *Equal Protection.*

■ Petitioners argue that the Program violates equal protection standards because: (1) it exempts from coverage vehicles manufactured before 1968 and all vehicles less than one year old; and (2) the $75.00 Repair Provision is discriminatory in its application.

We have previously determined that:

Equal protection does not prohibit classification for legislative purposes, provided that there is a rational and natural basis therefor, that it is based on a substantial difference between those to whom it does and those to whom it does not apply, and that it is so framed as to embrace equally all who may be in like circumstances and situations.

*Gruschus v. Bureau of Revenue,* 74 N.M. 775, 778, 399 P.2d 105, 107 (1965) (citations omitted). Furthermore, a presumption exists that legislative acts of a municipality are legal and valid, and their provisions are presumed constitutional. *City of Albuquerque v. Jones,* 87 N.M. 486, 535 P.2d 1337 (1975). Since the Program is "legislative in nature", the presumption extends to it. *Wylie Bros. Contracting Co. v. Albuquerque-Bernalillo County Air Quality Control Bd.,* 80 N.M. 633, 637–638, 459 P.2d 159, 163–164 (Ct.App.1969).

■ Petitioners first argue that there is no significant difference between 1967 model vehicles and 1968 model vehicles which justifies exempting 1967 model vehicles from the Program. They claim that the fact that pre-1968 model vehicles were not required by the EPA to have anti-pollution devices installed does not provide a rational basis for the exemption. We disagree.

The record indicates that the pre-1968 model vehicle exemption was decided upon for several reasons. First, the Environmental Protection Agency (EPA) did not require pre-1968 model vehicles to have pollution control devices. Second, EPA recommends that pre-1968 model vehicles and vehicles more than 15 years old be exempted from emissions inspection maintenance programs that grant age exemptions. The record indicates that such exemptions are granted in Connecticut, Missouri, and Colorado, while other programs exempt an even larger group of vehicles. Third, mechanical differences render pre-1968 vehicles more difficult to test for emission levels than vehicles manufactured in 1968 and thereafter. In addition, the State of New Mexico, pursuant to Section 66–3–844(C), requires that all vehicles manufactured in 1968 and thereafter be "maintained in good working order with the factory-installed devices and equipment * * * designed to prevent, reduce or control exhaust emissions or air pollution." Testimony at trial indicated that pre-1968 model vehicles cannot be measured by state-of-the-art testing equipment and that it is difficult to obtain parts in repairing and tuning-up pre-1968 model vehicles. Testimony at trial also indicated that it would be impossible to bring pre-1968 model vehicles within applicable emission standards without unfairly applying these standards.

After reviewing the record, we determine that the pre-1968 model vehicle exemption does not violate equal protection standards because there are significant differences between 1967 and 1968 model vehicles which provide a rational basis for exempting pre-1968 model vehicles.

■ Petitioners also argue that the $75.00 Repair Provision is discriminatory in its application. The Program establishes a maximum required low emission-related repair cost of $75.00 for vehicles to qualify for a certificate of waiver. However, the $75.00 Repair Provision does not apply to the cost of replacing or repairing anti-pollution equipment that has been removed or rendered inoperable by any person. Petitioners claim that by requiring the latter group of vehicles to come into compliance, regardless of cost, this exception denies equal protection to those persons whose

anti-pollution devices have been removed or rendered inoperable through no fault of their own.

It is rational and proper to single out persons who have intentionally removed or rendered inoperable anti-pollution devices. However, the Program allows vehicles whose anti-pollution devices that do not function properly or have been rendered inoperable or removed by another means to undergo no more than $75.00 worth of repairs even if those repairs do not bring the vehicle into compliance. The Federal Government has required all vehicles manufactured in a current year to meet certain emission standards. 42 U.S.C. § 7521(a) (Supp.V.1981). It is a violation of Federal law to remove or render inoperable the manufacturer's anti-pollution devices. 42 U.S.C. § 7522(a)(3)(A) (Supp.V.1981). In our opinion, it is not unfair or unreasonable to single out this group of violators and require them to spend whatever it takes to bring their vehicles into compliance. Nor is it unreasonable to exempt new cars from testing since Federal law requires that they meet the federal standards when manufactured. 42 U.S.C. § 7521(a) (Supp.V.1981).

■■■ This does not, however, address the real issue involving the $75.00 exemption. The Program, through testing, identifies vehicles that pollute. However, by paying up to $75.00 to a private individual, a mechanic, it allows the violators who are in effect "certified" as the worst pollutors to continue to operate their vehicles. This is not rational. It does not have any reasonable basis, nor is it designed to further the objectives of cleaning up the air. Allowing cars that fail the test to undergo no more than $75.00 worth of repairs, violates the Program's stated purpose which is to protect the health and welfare of the citizenry by reducing pollutant levels. If the Program is to operate fairly and pursue its stated purpose, then it is essential that all vehicles tested and proved to be operating

below the Program's emission standards be required to undergo sufficient repairs to bring them into compliance regardless of the expense involved.

We therefore determine that the $75.00 Repair Provision is invalid.

### III. *Criminal Penalties.*

Petitioners also argue that the Program is invalid because it imposes a criminal penalty in violation of state law. Article X, Section 6 provides in pertinent part:

E. The purpose of this section is to provide for maximum local self-government. A *liberal construction shall be given* to the powers of municipalities. (emphasis added).

In reviewing city legislation, we consider that:

[A] home rule municipality no longer has to look to the legislature for a grant of power to act, but only looks to legislative enactments to see if any express limitations have been placed on their power to act. *To adopt any other interpretation in New Mexico would make the home rule amendment meaningless.*

*Apodaca,* 86 N.M. at 521, 525 P.2d at 881 (emphasis added).

■■ In determining the authority of the Council to enact its ordinance, including its penalties, we must look at the applicable legislative enactment, the state Air Quality Control Act, NMSA 1978, Section 74–2–1 to Section 74–2–17 (Repl.Pamp.1983). Section 74–2–3(A) grants the Environmental Improvement board enforcement authority except in "municipalities within A class counties or A class counties which have elected, by adopting the appropriate ordinance, to assume jurisdiction for the administration and enforcement of the Air Quality Control Act." [2]

The Act specifically provides in Section 74–2–4(A) that:

---

2. An "A class county" is defined by NMSA 1978, Section 4–44–1 (Repl.Pamp.1980) as counties "having a final, full assessed valuation of over seventy-five million dollars ($75,000,000) and

having a population of one hundred thousand persons or more as determined by the last official United States census[.]"

A class counties and any municipality within an A class county which provides for air quality control *shall,* by ordinance, provide for the local administration and enforcement of the Air Quality Control Act * * *. The provisions of any such ordinance *shall be consistent* with the *substantive provisions* of the Air Quality Control Act * * *. (emphasis added).

The enforcement under the Act is civil in nature with two exceptions which are contained in Section 74-2-14. Section 74-2-14 provides in pertinent part:

A. [A]ny A class county or municipality within an A class county *may* prescribe penalties for violations of an ordinance:

* * * * * *

(2) prohibiting the removal of motor vehicle emission control devices installed as required by law and *requiring the maintenance of [motor vehicle emission control] devices in operating condition.*

B. [I]t *shall* be a petty misdemeanor to violate any regulation of the environmental improvement board:

* * * * * *

(2) prohibiting the removal of motor vehicle emission control devices installed as required by law or *requiring the maintenance of [motor vehicle emission control] devices in operating condition.* (emphasis added).

The question becomes whether the Act, which under *Apodaca* is a "general state law", in any way "expressly denies" the City the authority to provide for criminal sanctions.

Our reading of *Apodaca* leads to the inescapable conclusion that not only is there no express denial of that authority, but the Legislature specifically authorized it in Section 74-2-14. The fact that the Legislature provided additional civil penalties and prescribed the penalty for violation of board *regulations* does not eliminate that authority.

We therefore determine that the criminal penalty provisions of the Program are not invalid.

## IV. *Severability Clause.*

██ Having determined that at least two provisions of the ordinances are invalid, we address the effect of our decision. The ordinances have the following severability clause:

If any section, subsection, sentence, clause, word or phrase of this ordinance is for any reason held to be unconstitutional or otherwise invalid by any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance.

We have previously addressed the effect of the inclusion of a severability clause in an ordinance. In *Schwartz v. Town of Gallup,* 22 N.M. 521, 529, 165 P. 345, 348 (1917) we stated:

A part of the law may be unconstitutional and the remainder of it valid, where the objectionable part may be properly separated from the other without impairing the force and effect of the portion which remains, and where the legislative purpose as expressed in such valid portion can be accomplished and given effect, independently of the void provisions, and where if the entire act is taken into consideration it cannot be said that the enacting power would not have passed the portion retained had it known that the void provisions must fall. (citation omitted).

We have determined that a severability clause raises a presumption that the legislating body would have enacted the rest of the ordinance without the void section. *Barber's Super Markets v. City of Grants,* 80 N.M. 533, 458 P.2d 785 (1969). The severability clause in this case is emphatic in its statement that the ordinances would have been enacted even if the invalid provisions were not included.

We therefore determine that the invalid provisions do not invalidate the ordinances.

### V. Conclusion.

We are aware of the tremendous problem the government faces in trying to alleviate air pollution, some of which can be attributed to motor vehicle emissions. We are also aware of the difficulty involved in developing a program that meets the objective of clean air while complying with statutory and constitutional limitations. However, it is not for the courts to develop such a program, but rather it is the responsibility of the Legislature, the City, and the County to do so.

We conclude that the Program may be continued without imposition of a fee and without a repair cap for vehicles that do not come into compliance; otherwise, the Council and Commission will have to discontinue the Program.

IT IS SO ORDERED.

SOSA, Senior Justice, specially concurring.

FEDERICI, C.J., and STOWERS and WALTERS, JJ., concurring in part and dissenting in part.

SOSA, Senior Justice, specially concurring.

I concur with the four points in this opinion. However, under Point II, I would address the equal protection issue that was raised in oral argument, but not presented in the briefs. Specifically, the question of whether the program should be applied to all state residents or merely to residents of Bernalillo County is one that I believe merits attention. In *Wylie Brothers Contracting Co. v. Albuquerque-Bernalillo County Air Quality Control Board*, 80 N.M. 633, 459 P.2d 159 (Ct.App.1969), an opinion dealing with air pollution regulations, Justice Oman anticipated the problems we would encounter if regulations and controls were only local and not statewide. There he prophetically stated:

> To draft, and particularly to enforce, regulations for the control of emissions from these highly mobile vehicles on a single county-wide basis, would be extremely difficult. *The making of regulations relative to the control of emissions from these vehicles belongs to an agency with far greater geographic jurisdiction than that of a single county. The control thereof should be left very largely, if not entirely, to the state and federal governments.* (emphasis added).

*Id.* at 644, 459 P.2d at 170.

This is an issue of significant importance and general public nature affecting the interest of the state at large and, as such, this Court may consider it. *DesGeorges v. Grainger*, 76 N.M. 52, 412 P.2d 6 (1966). All citizens, not only those in Bernalillo County, should be afforded protection against air pollutants. A statewide program against vehicular pollution would equally regulate all vehicles in the state and remove the inequities in the program. As presently enforced, the pollution control program subjects only residents of Bernalillo County to the Inspection Program. The greater Albuquerque metropolitan area covers other counties. Citizens of these outside counties use Bernalillo County roads daily yet are not subject to the Inspection Program. This appears to me to be an arbitrary, unfair and selective imposition of a regulation on Bernalillo County residents.

It is my reading of Section 66–6–25, NMSA 1978, of the Motor Vehicle Code, that the statute directly prohibits the charging of any fees in connection with the operation of motor vehicles, no matter how noble the purpose. As a matter of public policy and with deep concern for the health and welfare of New Mexico citizens, I agree with the need for an effective program to prevent increased air pollution. However, it is not within the province of the judiciary to change Section 66–6–25. The legislature must remedy this defect.

FEDERICI, Chief Justice and WALTERS, Justice (concurring in part, dissenting in part).

We concur in Justice Riordan's disposition of Points II, III, and IV. We disagree with the decision regarding Point I since

Section 66–6–25, NMSA 1978, refers to proscription of fees for "registration" of vehicles by a county or municipality, and not to fees for other purposes. We therefore respectfully dissent on that issue.

STOWERS, Justice (concurring in part, dissenting in part).

I concur in the disposition of points I, II, and IV of the opinion. I dissent as to point III, in that the imposition of criminal penalties exceeds the legislative authority which is limited to civil sanctions and fines.