Earl T. FREDERICK and Frances S. Frederick, Individually and on behalf of all others similarly situated, Movants,

v.

AIR POLLUTION CONTROL DISTRICT OF JEFFERSON COUNTY and Robert Offutt, Director, Air Pollution Control District of Jefferson County, Individually, and in his official capacity, Respondents.

No. 89–SC–000038–DG.

Supreme Court of Kentucky.

Jan. 18, 1990.

Theodore H. Amshoff, Jr., Robert Michael Stevenson, James William Turner, Jr., Louisville, for movants.

Eugene L. Mosley, Evan G. Perkins, Gaylord B. Ballard, Louisville, Frederick J. Cowan, Atty. Gen., David R. Vandeventer, Asst. Atty. Gen., Frankfort, for respondents.

## OPINION OF THE COURT

The Kentucky Supreme Court hereby affirms the decision of the Court of Appeals to reverse and remand on the direct appeal and to affirm on the cross-appeal in this matter. This Court adopts the opinion of the Court of Appeals which is as follows:

"Nos. 87–CA–1403–MR and
87–CA–1456–MR

Air Pollution Control District of Jefferson
County; and Robert Offutt, Director,
Air Pollution Control District of Jeffer-
son County, Individually and in his of-
ficial capacity, Appellants/Cross–Ap-
pellees

v.

Earl T. Frederick; and Frances S. Freder-
ick, Individually and on behalf of all
others similarly situated, Appel-
lees/Cross–Appellants

Appeal and Cross–Appeal from
Jefferson Circuit Court

Honorable Edwin A
Schroering, Jr., Judge

Action No. 85–CI–3743

REVERSING AND REMANDING ON
DIRECT APPEAL, AND
AFFIRMING ON CROSS–APPEAL

"Before: COMBS, DYCHE, and GUDGEL,
Judges.

"GUDGEL, Judge: This is an appeal and
cross-appeal from a declaratory judgment
entered by the Jefferson Circuit Court.
The court adjudged that District Regula-
tion 8 pertaining to the Vehicle Emissions
Testing Program created by the Air Pollu-
tion Control District of Jefferson County
(APCD) is constitutional, but that section 7
of the regulation providing for the payment
of a $6 mandatory testing fee is unconstitu-
tional. On direct appeal, APCD and its
director contend the court erred by declar-
ing that section 7 of the regulation is un-
constitutional. On cross-appeal, appellees
contend that the court erred by failing to
find that Regulation 8 is unconstitutional in
its entirety. We agree with appellants'
contention, but disagree with appellees'
contention. Hence, we reverse and remand
on the direct appeal, and affirm on the
cross-appeal.

"In 1952, the legislature enacted KRS
Chapter 77 for the purpose of providing a
statutory scheme to regulate problems of
air pollution in the various counties of the
state. The statute creates an air pollution

control district in each county, the bound-
aries of which are coextensive with those
of the county. KRS 77.010. However, al-
though these districts are statutorily cre-
ated, no district may function until the
county's appropriate legislative bodies, af-
ter notice and a hearing, enact a resolution
declaring that there is a need for the dis-
trict to function. KRS 77.015, 77.020, and
77.025. The resolution adopted for this
purpose must include the following find-
ings of fact:

(1) That the air within such county is
so polluted with air contaminants as to
be injurious to health, or an obstruction
to the free use of property, or offensive
to the senses of a considerable number
of persons, so as to interfere with the
comfortable enjoyment of life or proper-
ty;

(2) And further that for any reason it
is not practical to rely upon the enact-
ment or enforcement of local ordinances
to prevent or control the emission of
smoke, fumes, or other substances which
cause or contribute to such pollution.

"Once a district is validly activated, it is
statutorily provided with authority to exer-
cise the following powers:

KRS 77.060(1). The district shall have
power to sue and be sued, contract and
be contracted with, make rules and regu-
lations and do all other things necessary
to carry out the provisions of this chap-
ter.

KRS 77.115. The air pollution control
board is hereby declared to be the gov-
erning body of an air pollution control
district, and shall manage and control all
the affairs and property of such district,
and shall exercise all the powers of such
district not otherwise delegated by this
chapter.

KRS 77.155(2). ... The board shall
have power, by regulation, to fix reason-
able limits, by weight or otherwise, for
particular air contaminants or other ma-
terial which in the opinion of said board
may cause or have tendency to cause
injury, detriment, nuisance, or annoyance
to any considerable number of persons or
to the public. . . .

"Moreover, additional specific regulatory authority is conferred on APCDs by KRS 77.190 and KRS 77.195. KRS 77.190 authorizes APCDs to make and enforce such regulations "as will reduce the amount of air contaminants released within the district," while KRS 77.195 authorizes APCDs to require that a permit be obtained by anyone who seeks to build, erect, alter, replace, operate, or use any article, machine, equipment or other contrivance which may cause issuance of air contaminants. Further, KRS 77.180 authorizes each APCD to make and enforce all regulations necessary or proper for the accomplishment of the district's administrative needs and the chapter's purposes. Finally, KRS 77.205 authorizes APCDs to charge and collect permit and inspection fees.

"The legislative bodies of Louisville and Jefferson County activated the appellant APCD in 1952, and it has functioned continuously since that date. Due in large part to the necessity of meeting the requirements of the Federal Clean Air Act, after much study and debate the APCD promulgated on January 5, 1983, a Regulation 8 creating a Vehicle Exhaust Testing Program (VET) for Jefferson County. The regulation applies to all motor vehicles registered in Jefferson County, to vehicles located in Jefferson County but registered to the federal or state government, and to vehicles registered in other Kentucky counties but owned by declared Jefferson County residents. The owners of all such vehicles are required to have them inspected and tested once each year to determine whether they emit carbon monoxide, carbon dioxide, or hydrocarbons in excess of certain prescribed standards. Moreover, the owner of each vehicle must pay a $6 inspection fee to the private contractor who performs the required inspection, of which amount the contractor receives $5.17. The APCD utilizes the remaining $0.83 to cover its costs of operating the VET program.

"Appellees filed this action on May 9, 1985, seeking an adjudication that the VET program, as organized and implemented, is unconstitutional. After discovery was completed the matter was submitted to the court on a motion for summary judgment.

On February 6, 1987, the court entered a judgment finding that Regulation 8 is constitutional except for section 7 pertaining to the payment of inspection fees. This appeal and cross-appeal followed.

"First, we address appellees' three-pronged contention on cross-appeal that the court erred by failing to find that Regulation 8 is unconstitutional in its entirety. Appellees argue that there is no statute which vests the APCD with the authority to create and enforce a VET program by regulation, and further, that Regulation 8 as adopted denies them both equal protection and due process of law. We disagree with appellees' arguments.

■ "The regulatory scheme embodied in KRS Chapter 77 is clearly intended to address and regulate the basic modern public health problem of air pollution. As noted in *Graybeal v. McNevin*, Ky., 439 S.W.2d 323, 325 (1969), it is settled that "[a]mong the police powers of government, the power to promote and safeguard the public health ranks at the top. If the right of an individual runs afoul of the exercise of this power, the right of the individual must yield." Further, the constitutional limitation on the exercise of power to regulate private property in the interest of public health comes down to a question of "reasonability." *Adams, Inc. v. Louisville & Jefferson County Board of Health*, Ky., 439 S.W.2d 586 (1969). In determining whether a given regulation impairing private rights is unreasonable, a court must consider many factors, such as habits and customs, common knowledge, cost, and necessity. *Id.* at 592. Moreover, the state may legislatively delegate to one of its subdivisions the power to require citizens to take action in regard to private property in order to abate a nuisance or other condition inimical to the public health. *Sanitation District No. 1 of Jefferson County v. Campbell*, Ky., 249 S.W.2d 767 (1952).

■ "Appellees urge that although KRS 77.195 delegates to APCDs certain specific powers to regulate air contaminants, that delegation does not include and cannot be construed to confer the power to regulate

motor vehicle emissions. *Cf. Bloemer v. Turner*, 281 Ky. 832, 137 S.W.2d 387 (1939). Appellees' argument, however, is fallacious because it assumes that APCDs possess only the powers specifically enumerated in KRS 77.195. Instead, KRS Chapter 77 confers not only those specific powers, but also the other significant general powers which are enumerated elsewhere in the same chapter. For example, as noted above, APCDs have the power to make regulations which are necessary in order to carry out the statute's provisions and purposes, to establish reasonable limits for particular air contaminants, and to regulate the amounts of air contaminants released within the districts. *See* KRS 77.-060, 77.155, 77.180, and 77.190. Thus, contrary to appellees' argument, the specific powers enumerated in KRS 77.195 indicate merely an expansion, rather than a restriction, of APCDs' powers. Therefore, given the fact that several separate statutes confer extensive general powers to APCDs to regulate air pollution, it would be unreasonable and unjustified to conclude, as appellees suggest, that KRS 77.195 was intended to limit APCDs' powers to those specifically enumerated in that particular statute, especially since that statute's title indicates that it concerns only the regulation of air contaminants from installations, rather than from motor vehicles.

■ "As we view the matter, the issue of whether Regulation 8 and its VET program are constitutional boils down to a determination of whether they amount to a reasonable exercise of appellant APCD's extensive power to prevent and reduce air pollution. *See Adams, supra.* We conclude that Regulation 8 is both reasonable and constitutional.

"KRS Chapter 77 is clearly intended to address and regulate problems associated with air pollution, including those related to vehicle emissions. *See* KRS 77.155 and KRS 77.165. Indeed, KRS 77.990 specifically provides for the imposition of criminal penalties on motor vehicle operators who violate the prohibitions set forth in KRS 77.155 concerning air pollution. Moreover, in matters affecting public health we have

traditionally attempted to provide reasonable and adequate regulation by requiring persons to obtain permits before engaging in those particular types of conduct which affect the public health, such as the operation of restaurants or swimming pools. We similarly find that it is reasonable here to require the testing of motor vehicle emissions, as it is common knowledge that excessive vehicle emissions can create such a degree of air pollution as to be injurious to humans. Clearly, larger cities such as Louisville need to have some way of ensuring that the collective emissions from the area's motor vehicles will not pollute the air to such an extent as to be inimical to the public's health. The Federal Clean Air Act, in fact, mandates Louisville's implementation of such a program in order to continue receiving certain federal funding.

"Appellees cite us to nothing in Regulation 8 which they find offensive or unreasonable. Instead, their entire argument is based on the premise that KRS Chapter 77 simply does not authorize the APCD's creation of a VET program. Contrary to appellees' argument, however, we conclude that the statute construed as a whole is sufficiently broad enough to confer such power on the APCD, and that the regulation's testing program, when measured in light of the relevant factors governing reasonability, is clearly constitutional and enforceable. We hold, therefore, that the court did not err by finding that KRS Chapter 77 vests the APCD with the power to create and implement a VET testing program.

■ "Next, appellees contend that the APCD's VET program denies them equal protection of the law. First, they argue that vehicle owners who must repair their vehicles are denied equal protection by virtue of the exemption which exists for vehicles which fail a retest, and cannot be brought into compliance with the regulation without costing in excess of certain specified sums. Further, they argue that they are denied equal protection because Regulation 8 does not apply to vehicles which are owned by non-Jefferson County residents and registered in other counties,

even though such vehicles may be operated daily in Jefferson County. We conclude that neither equal protection argument has merit.

"In the first place, as noted by appellants, the exemption's purpose is to avoid forcing owners to repair vehicles when the costs of such repairs may exceed the fair market values of the vehicles. To require otherwise would clearly be unreasonable, with the result that the validity of the entire program would be seriously undermined. Moreover, although the exemption permits a certain class of vehicle owners to continue operating their vehicles outside of existing emission standards, the fact nevertheless remains that the regulation's overall impact is the measurable reduction of vehicle emissions in Jefferson County to levels below those mandated by federal law. It follows, therefore, that the exemption does have a rational basis in fact. If this exemption did not exist, owners of vehicles in the exempted class could justifiably attack the regulation as unreasonable. Since there is a rational basis in fact for creating the exemption, the regulation is not subject to attack on equal protection grounds, especially since the exemption does not adversely affect the regulation's overall purpose of reducing air pollution levels. Further, the result in *Chapman v. Luna*, [101 N.M. 59,] 678 P.2d 687 (N.M. 1984), *cert. denied* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985), as cited by appellees, is distinguishable because in that case there was no consideration given to whether the exemption in question adversely affected the testing program's overall effectiveness. Here, by contrast, the record clearly examines and shows that a rational basis exists for the exemption, that it is a reasonable exemption, and that it does not undermine the overall purposes of the testing program.

"Appellees' second equal protection argument also lacks merit. Although the Jefferson County APCD has jurisdiction to cite nonresident owners and operators of out-of-county vehicles for violating KRS 77.155, it lacks jurisdiction to require such persons to test their vehicles under the VET program. *See* KRS 77.010. It there-fore cannot be said that the APCD's failure to attempt to exercise jurisdiction over nonresidents, or over vehicles registered in other counties unless owned by Jefferson County residents, denies appellees equal protection of the law.

■ "Next, appellees argue that Regulation 8 denies them due process of law because it deprives them of their property without a hearing. We disagree.

"Any persons, including appellees, who are cited for violating Regulation 8 are entitled to the full panoply of due process rights afforded to any other criminal defendants cited to appear in court for committing violations. We therefore fail to perceive how Regulation 8 denies appellees due process, as they have no greater due process right to a hearing to determine whether they should be cited for violating Regulation 8 than have those who are cited for running stop signs. To contend otherwise, as appellees have done, is untenable.

"Finally, on direct appeal, appellants contend that the circuit court erred by finding that the regulation's $6 testing fee is unconstitutional. We agree.

■ "The applicable statute, KRS 77.-205, permits the APCD to charge fees for inspections provided that the fees do not exceed the estimated costs of the inspections. The court concluded that the $6 testing fee charged by the APCD pursuant to section 7 of the regulation is unconstitutional because it exceeds the estimated cost of an inspection. The court's conclusion was based on its finding that the private contractor hired to perform emissions testing for the APCD receives a built-in profit on each fee charged, and that the APCD itself receives the sums 'the contractor has left over.' We conclude, however, that the record does not support the court's conclusions in this vein.

"KRS Chapter 77 vests APCDs with the authority to contract and be contracted with, and to employ experts as deemed necessary to assist in the performance of APCD duties. *See* KRS 77.095 and 77.060. Clearly these statutes are sufficiently broad enough to authorize the APCD's em-

ployment of a private contractor to perform emissions testing on its behalf pursuant to Regulation 8. Moreover, it is evident that the fees normally charged by an expert for contracted services would include reasonable profits for the expert's efforts, over and above the fixed costs of performing the services, as otherwise there would be no incentive for the expert to contract to perform such services. Given the fact that the APCD is authorized to employ a private contractor to perform tests, the actual fee charged the APCD by that contractor is obviously part of the 'cost' contemplated by KRS 77.205, and the fact that the fee charged may include a profit to the contractor is of no significance. Moreover, as the record shows that the APCD pays its private contractor $5.17 per test and utilizes the remaining $0.83 of each test fee to cover its administrative costs for printing and related expenses, there is simply no evidence to support a finding that the $6 fee violates KRS 77.205 by exceeding the APCD's estimated cost for performing each inspection. That being so, it follows that the court erred by finding that section 7 of Regulation 8 is unconstitutional.

"The court's judgment is affirmed on cross-appeal, and reversed and remanded on direct appeal with directions to enter an amended judgment consistent with the views expressed in this opinion."

STEPHENS, C.J., and GANT, LAMBERT and LEIBSON, JJ., concur.

COMBS, J., not sitting.

WINTERSHEIMER, J., files a separate concurring opinion.

VANCE, J., files a separate dissenting opinion.

WINTERSHEIMER, Justice, concurring.

I concur with the result achieved by the majority opinion, but I believe that the system used for the control of air pollution in Jefferson County is riddled with serious and improper exemptions. However, I do not believe the nature of the exemptions render the entire act unconstitutional.

Under Regulation 8(8)(e), motor vehicles requiring repair in excess of the dollar limits set out in the regulation are exempt from enforcement. Consequently the owners of the motor vehicles that emit the greatest amount of pollutants may continue to operate their vehicles without any sanction.

The New Mexico Supreme Court invalidated a similar repair exemption provision holding that such a distinction is not rational and does not have a reasonable basis, nor is it designed to further the objectives of cleaning the air. *Chapman v. Luna*, 101 N.M. 59, 678 P.2d 687 (1984) cert. den. 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985). I can agree with our court when *Chapman, supra* is distinguished because there was no consideration given as to whether the exemption adversely affected the testing program's overall effectiveness. I disagree with the majority that it would be unreasonable to require the exempted vehicles to be brought into compliance simply because it would cost too much. The worst polluters cannot be allowed to continue to infect the air. The system should be applied to *all* vehicles, including city bus transportation and trucks of all description and size. The law must be applied equally to all citizens. The Kentucky constitution forbids the exercise of absolute and arbitrary power even by the largest majority. Const. § 2. An administrative agency is prohibited from acting in an arbitrary manner by this constitutional section. *Bunch v. Personnel Board*, Ky.App. 719 S.W.2d 8 (1986).

The control of air pollution is one of the most serious problems in our society within this state as well as our nation. Public health and safety is the proper concern of government, and consequently air pollution emission standards should apply to all polluters. In this case, I believe the regulation is constitutional but it is not applied to the extent that it should be and it is not fully implemented.

VANCE, Justice, dissenting.

Under our constitutional system, the law must apply equally to all citizens. We

have held that laws are constitutional which apply to a specific category or classification as long as they apply equally to everyone within the class; but for the classification rule to apply, there must be a rational basis for the classification in that the general purpose of the classification is not adversely affected or compromised by limiting its application to a specific class or by excluding a specific class from its operation.

The general purpose of the classifications here is to control air pollution by controlling excessive emissions of pollutants into the air. To that end, vehicle emission inspections are required on all vehicles, but not all vehicles which fail to pass the inspection are required to be repaired so as to meet the emission standards. Where the cost of repair to bring a vehicle into compliance exceeds a certain sum, the vehicle is exempt from compliance and may continue to pollute at will.

We were informed at oral argument that the city bus transportation system is also exempt from compliance. Anyone who has been in heavy traffic subjected to the suffocating exhaust fumes of city buses will have some difficulty in understanding why they should be exempt from compliance with promulgated emission regulations. In fact, it would appear that these regulations are designed to require compliance by everybody except one specific class, namely, the very worst polluters.

What can be the rational basis for the exclusion, as a class, of the worst air polluters from a regulation promulgated to control the emission of air pollutants? I see none. This exemption of this class of air polluters most certainly adversely affects and compromises the objective sought to be accomplished by the regulations, and the exemption, therefore, does not have a rational basis to the regulations.

The majority opinion states that it would be unreasonable to require some vehicles to be brought into compliance with the standards if it would cost too much to do so. If the public safety and health requires that vehicle emissions be brought within certain standards, then it is all the more important that those who are the worst polluters must not be allowed to foul the air with emissions.

The need to control air pollution is one of the most pressing problems confronting our society as far as public health and safety are concerned, but regulations which seek to control air pollution must be made to apply equally to all polluters. I cannot agree that a regulation which exempts the worst polluters from compliance is constitutional.