Ramona TAFOYA, et al., Plaintiffs,

v.

CITY OF ALBUQUERQUE, et al., Defendants.

No. CIV–89–1348 SC.

United States District Court, D. New Mexico.

Oct. 30, 1990.

Peter F. Lindborg, Susan H. Biernacki, The Eaves Law Firm, P.C., Albuquerque, N.M., for plaintiffs.

Robert M. White, David S. Campbell, Asst. City Atty., Albuquerque, N.M., for defendants.

### MEMORANDUM OPINION AND ORDER

CAMPOS, District Judge.

Plaintiffs to this action are individuals who have previously been licensed to sell wares in the H–I Historic Old Town Zone in Albuquerque ("Old Town"). Plaintiffs lost their right to be licensed pursuant to the terms of a City Ordinance passed on August 7, 1990, which allows only New Mexico residents who are members of federally recognized tribes or pueblos, or of the Navajo Nation, to sell wares in Old Town. Plaintiffs move for summary judgment as to their claims that the Ordinance should be ruled unconstitutional and enjoined. The Court, agreeing with plaintiffs' claims regarding the Ordinance's "Indian giving" practices, and finding that no genuine issue of material fact exists as to plaintiffs' claims, grants the motion and enters judgment for the plaintiffs.

A motion for summary judgment should be granted only where no genuine issue of material fact exists entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden of establishing the absence of a material question of fact is on the moving party which may discharge its duty by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party has the opportunity to show the existence of an issue of material fact; however, the Court must consider the standard of proof in the case and determine whether, considering all facts in favor of the non-moving party, that party's showing would allow a reasonable trier of fact to find for the non-moving party on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir.1980).

### I. FACTS

This lawsuit involves the Old Town Solicitations Ordinance ("Ordinance"), Council Bill No. 0–137, Enactment No. 57–1989, enacted by the City Council for the City of Albuquerque on August 7, 1989, and Council Bill No. 0–138, Enactment No. 58–1989 ("Enactment No. 58–1989"), amending the Business Solicitations Ordinance, also enacted on August 7, 1990. The Ordinance significantly changes the procedure by which licenses are issued to sell goods in Old Town. Specifically, the Ordinance limits the selling of goods to New Mexico residents who are members of the Navajo Nation or of a federally recognized Indian tribe or pueblo.

Plaintiffs include a member of the federally recognized Cherokee Nation who resides in Arizona, Indians who are not members of federally recognized tribes or pueblos, and non-Indians. They bring suit seeking to enjoin the enforcement of the two ordinances and to declare the Ordinance unconstitutional.

Plaintiffs assert several bases for their claims for relief: (1) the Ordinance violates the Privileges and Immunities Clause of the United States Constitution; (2) the Ordinance violates the Equal Protection guarantees of the Fourteenth Amendment of the United States Constitution, and Article II, Section 18, of the New Mexico Constitution; (3) the Ordinance violates the Due Process guarantees of the Fourteenth Amendment of the United States Constitution, and of Article II, Section 18, of the New Mexico Constitution; (4) the Ordinance violates the Commerce Clause of the United States Constitution; (5) the Ordinance violates Title II of the Civil Rights Act of 1964; (6) the plaintiffs are entitled to bring suit pursuant to Title III of the Civil Rights Act of 1964; and (7) the plaintiffs are entitled to relief under 42 U.S.C. § 1983.

### II. PRIVILEGES AND IMMUNITIES CLAUSE

■ The Ordinance grants only residents of New Mexico the right to obtain licenses

to sell in Old Town. Out-of-state residents, including plaintiff Thomas R. Christie, are deprived of the right to sell even if they meet all other requirements of the Ordinance.[1]

The Ordinance plainly violates the Privileges and Immunities Clause in that it accords varying rights to residents and non-residents of New Mexico.[2] The Supreme Court has held that access to employment, which is essentially what is involved here, is a fundamental right triggering the Privileges and Immunities Clause. *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

■ The determination that the Ordinance violates the Privileges and Immunities Clause does not invalidate the entire Ordinance; rather, the language allowing only New Mexico residents to obtain permits will be severed from the remainder of the Ordinance. The Ordinance contains a Severability Clause which establishes that any portion of the Ordinance deemed unconstitutional or otherwise invalid will not affect the validity of remaining portions of the Ordinance (Ordinance at § 21). The Severability Clause will be given effect and only the portions of the Ordinance held to be invalid will fall. *Schwartz v. Town of Gallup,* 22 N.M. 521, 529, 165 P. 345 (1917); *Chapman v. Luna,* 101 N.M. 59, 65, 678 P.2d 687, *cert. denied,* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1984).

### III. COMMERCE CLAUSE

Plaintiffs also challenge the Ordinance's requirement that vendors be residents of New Mexico as a violation of the Commerce Clause requirement that a state deal evenhandedly with its own citizens and citizens of other states with respect to matters of interstate commerce.

Defendants' response addresses only the legitimacy of licensing fees and does not respond to plaintiffs' arguments. Nonetheless, having struck down the language of the Ordinance which discriminates against non-residents of New Mexico as violating the Privileges and Immunities Clause of the United States Constitution, it is not necessary to rule on possible Commerce Clause violations.

### IV. DUE PROCESS

Plaintiffs also base their Motion for Summary Judgment on the basis that the Ordinance is vague, in violation of the Due Process Clauses of the United States and New Mexico Constitutions.

■ The Court declines to address plaintiffs' arguments as plaintiffs lack standing to challenge the alleged vagueness of, or inconsistencies in, the language of the Ordinance.

Article III of the United States Constitution requires that persons seeking to invoke the Court's jurisdiction have a personal stake in the outcome of the controversy. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The basis for this suit is plaintiffs' inability to be licensed and to sell wares under the Ordinance. Plaintiffs certainly lack standing to challenge the manner in which the Ordinance affects those operating pursuant to its terms.

### V. EQUAL PROTECTION

■ Plaintiffs move for summary judgment as to their claim that the Ordinance violates the Equal Protection Clauses of the Constitutions of the United States and New Mexico. Defendants contest the claim relying primarily on *Morton v. Mancari,* 417 U.S. 535, 537–38, 94 S.Ct. 2474,

---

1. Plaintiffs misrepresent statements made in Defendants' Response to Plaintiffs' Motion for Summary Judgment. Defendants do not concede "that the Ordinance under review impermissibly violates the privileges and immunities clause...." (Reply in Support of Plaintiffs' Motion for Summary Judgment at p. 2.) Defendants merely argue that *if* the ordinance violates the Privileges and Immunities clause, the objectionable sections should be severed.

2. Although the Privileges and Immunities Clause speaks of state citizenship, it is well recognized that the Clause bars discrimination against non-residents of a state. *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 *reh'g denied,* 410 U.S. 959, 93 S.Ct. 1410, 35 L.Ed.2d 694 (1973).

2476–77, 41 L.Ed.2d 290 (1974). *Morton* involved an employment preference for qualified Indians under the Indian Reorganization Act of 1934, as modified by a 1972 directive. Indians were given preferential treatment in both hiring and promoting decisions pertaining to jobs within the Bureau of Indian Affairs ("BIA"). A group of non-Indian employees brought suit contesting the employment policies.

In determining that preferences for Indians did not constitute "invidious racial discrimination" in violation of the Due Process Clause of the Fifth Amendment, the Court cited the unique status of Indian tribes under federal law.[3] *Id.* at 551, 94 S.Ct. at 2483. The Court noted that the Constitution itself allows Congress to regulate commerce with Indian tribes. Article I, § 8, cl. 3. The Court interpreted this constitutional provision as permitting separate federal legislation with respect to Indians.

Of particular importance to this case, according to Defendants, is the Supreme Court's conclusion regarding the nature of the preference for members of federally recognized Indian tribes:

> The preference is not directed toward a 'racial' group consisting of 'Indians'; instead, it applies only to members of 'federally recognized' tribes. This operates to exclude many individuals who are racially to be classified as 'Indians.' In this sense, the preference is political rather than racial in nature. *Id.* at 553, n. 24, 94 S.Ct. at 2484, n. 24.

The Court reasoned that the preferences were not racial classifications but employment criterion established by BIA to further the cause of Indian self-government and to make the BIA more responsive to the needs of its constituent groups. *Id.* at 554, 94 S.Ct. at 2484.

The Court concluded that "[a]s long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." *Id.* at 555, 94 S.Ct. at 2485.

Close analysis of the United States Supreme Court's holding in *Morton* establishes that the various bases for permitting preferential treatment of tribal and pueblo Indians are not present here.

As the Supreme Court so clearly stated in *Morton*, Congress' obligations to Indians are constitutionally based and unique. The City of Albuquerque does not have comparable power to treat members of federally recognized Indian tribes or pueblos or members of the Navajo Nation differently than other groups of Indians or non-Indians.

In addition, the Court partially based its holding in *Morton* on the fact that BIA preferences were employment criteria rationally related to furthering the very functions of BIA including self-governance by Indians and economic self-determination. This should be contrasted with the stated legislative intent of the Albuquerque Ordinance "to preserve, protect and promote the educational, cultural and artistic interest" of Old Town and the general public. (Ordinance at ¶ 2, *et seq.*) The City of Albuquerque has no particularized interest in furthering Indian interests which is comparable to that of the Bureau of Indian Affairs, an agency created by the United States Congress to advance its constitutional rights and obligations with respect to Indians. Of particular importance is the fact that Old Town has no history as an Indian marketplace. Deposition testimony and documentation from defendants' expert witness indicate that histories of Albuquerque make no reference to Indian vendors in Old Town between 1706 and 1900. In 1860, of 1203 residents in the Old Town area, only twenty-seven (27) were Indians. (Plaintiffs' Motion for Summary Judgment, Exhibit 6.) *C.f. Livingston v. Ewing,* 455 F.Supp. 825 (D.N.M.1978), *aff'd,* 601 F.2d 1110 (10th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 147, 62 L.Ed.2d 95 (1979).

In *Morton,* the Supreme Court did not apply "strict scrutiny" or any other tradi-

---

**3.** The Court recognizes that *Morton* was decided on Due Process rather than Equal Protection grounds. However, the Court's determination regarding the nature of the discrimination is applicable to Equal Protection analysis.

tional standard of equal protection review. A similar observation was made in *Richmond v. J.A. Croson Company,* 488 U.S. 469, 487, 109 S.Ct. 706, 717, 102 L.Ed.2d 854 (1989), where the Supreme Court noted that equal protection analysis had not been applied in *Fullilove v. Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). The parallels between *Richmond* and *Fullilove,* and *Morton,* and this case are significant. Like the case at bar, *Richmond* involved a city plan which was facially discriminatory in favor of traditional "suspect classes." The proponents of the city plan relied on *Fullilove* to support upholding the plan. In *Fullilove* the Supreme Court had accorded tremendous deference to Congress' findings of past societal discrimination in upholding a federal minority set-aside plan aimed at remedying past discrimination. In holding the reasoning of *Fullilove* to be inapplicable to the Richmond City plan, the Supreme Court pointed to the unique remedial powers of Congress to remedy the effects of past discriminatory practices and to enforce equal protection guarantees. *Richmond v. J.A. Croson Company,* 488 U.S. at 488, 109 S.Ct. at 718 and 490, 109 S.Ct. at 719 (plurality portion of opinion):

> Congress, unlike any State or political subdivision, has a constitutional mandate to enforce the dictates of the Fourteenth Amendment ... That Congress may identify and redress the effects of society-wide discrimination does not mean that, *a fortiori,* the States and their political subdivisions are free to decide that such remedies are appropriate. *Id.* at 490, 109 S.Ct. at 719 (plurality portion of opinion); *see also id.* at 504, 109 S.Ct. at 727 (majority portion of opinion).

In addition, in ruling the Richmond City plan to be unconstitutional, the Court identified as a "fatal defect" the absence of evidence of past racial discrimination which would be directly remedied by the plan. The Court is clear that even a generalized history of private and public discrimination is insufficient to justify a discriminatory plan. *Id.* at 499, 109 S.Ct. at 723.

In *Richmond,* the Court concluded that in the absence of identifiable past discrimi-

nation in the specific area addressed in the facially discriminatory plan, strict scrutiny is to be applied; the City must demonstrate a compelling interest in maintaining discriminatory treatment and demonstrate that the plan is narrowly tailored to cure identifiable past discrimination. *Id.* at 505–06, 109 S.Ct. at 727–28.

The same basis on which the Supreme Court struck down the city plan in *Richmond* is applicable to this case. The Albuquerque City Council has considerably less power than the United States Congress to pass law discriminating in favor of members of federally recognized Indian tribes and pueblos. In this respect, the rationale in *Morton* is inapplicable to this case. Strict scrutiny is applicable because the City of Albuquerque has made no particularized showing of past discrimination against members of federally recognized Indian tribes or pueblos or against members of the Navajo Nation with respect to such individuals' ability to sell goods in Old Town. Furthermore, the City of Albuquerque has failed to demonstrate any compelling interest in upholding the Ordinance: there is no factual predicate to suggest that the Ordinance remedies past discrimination as to licensing in Old Town and the Ordinance is not narrowly tailored to cure such identifiable discrimination. Having failed to meet the stringent requirements of strict scrutiny, the Ordinance will be deemed unconstitutional in its entirety.

## VI. CLAIMS PURSUANT TO TITLES II AND III OF THE CIVIL RIGHTS ACT OF 1964 AND 42 U.S.C. § 1983

As the Court has struck down the Ordinance on Equal Protection grounds, it is unnecessary to address Plaintiffs' Motion for Summary Judgment as to claims that they are entitled to relief under Title II of the Civil Rights Act of 1964, Title III of the Civil Rights Act of 1964, and 42 U.S.C. § 1983.

IT IS, THEREFORE, THE ORDER OF THE COURT that Plaintiffs' Motion For

Summary Judgment should be, and hereby is, GRANTED.